No. 15-2108

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

### UNITED STATES OF AMERICA
Plaintiff – Appellee,

v.

### DANIEL T. ECKSTROM
Defendant – Appellant.

Appeal from the United States District Court
for the Northern District of Indiana
Case No. 2:13 CR 84
The Honorable Philip Peter Simon
United States District Judge

## APPENDIX

P. Jeffrey Schlesinger
Attorney at Law
8396 Mississippi Street
Suite G
Merrillville, IN 46410
Telephone: (219) 736-5555
Facsimile: (866) 828-7739
pjeffslaw@aol.com

Attorney for Defendant – Appellant
ECKSTROM DANIEL THOMAS

## TABLE OF CONTENTS

**Page**

Transcript of District Court ruling at sentencing……………………………………………1-20

1  a sentence that is the only sentence in this case that truly

2  accomplishes the factors set forth maintaining this 3553(a).

3  We ask Your Honor to sentence the defendant to a

4  life-equivalent sentence.  Thank you.

5       THE COURT:  All right.  As we know, the Supreme Court

6  has modified the Federal Sentencing Act and made the

7  Sentencing Guidelines advisory.  Prior to "United States v.

8  Booker," the guidelines were mandatory, and the judges, like

9  myself, had to follow the guidelines.  But Booker demoted the

10  guidelines from a mandatory document to advisory instead.

11       So I certainly have to take the sentencing

12  guidelines into consideration when I render a sentence, but

13  I'm also required to consider all of the other factors under

14  3553(a) in arriving at what is hopefully a reasonable and

15  appropriate sentence given all the circumstances.

16       I cannot arrive at a sentence with a thumb on

17  the scale in favor of the guidelines; in other words, the

18  guidelines are neither more important nor less important than

19  all of the other factors.  So in addition to the sentencing

20  guidelines, I have to take into account the nature of the

21  circumstances of the offense, the history and characteristics

22  of the defendant.  The sentence that I impose must reflect the

23  seriousness of the offense, it must promote respect for the

24  law, and it must provide just punishment for the offense.  And

25  I have to be concerned in imposing a sentence that will deter

**BEFORE THE HONORABLE PHILIP P. SIMON**                    67

1  criminal activity, both specific deterrence, protecting the

2  public from further crimes of the defendant, himself; but also

3  the concept of general deterrence, so that the sentence will

4  adequately deter criminal activity in general.

5          The sentence that I give must attempt to avoid

6  unwarranted sentencing disparities among similarly situated

7  defendants.  And ultimately, the goal is to arrive at a

8  sentence that is sufficient, but not greater than necessary,

9  to achieve the statutory goals of sentencing.

10         In preparing for the sentencing hearing, as I

11 mentioned at the outset of the hearing, I reviewed all of the

12 material that was presented to me; but in particular, the

13 defendant filed a Supplemental Sentencing Memorandum, wherein

14 there were several letters attached.  The first letter was

15 from the defendant, himself.  I also received a letter from a

16 Sharon Knight.  I received a letter from somebody within the

17 jail ministry; his name is just Greg.  I received a letter

18 from a Doyle Buckner, who's the chaplain at the Kankakee

19 facility.  I received a letter from another person in -- or

20 member of the prison ministry.  His name is J. Bournes.  I

21 received a letter from Marcy Brinkman, who is the defendant's

22 aunt and godmother.  I received a letter from Laura Reaux

23 (phonetic).  That's the defendant's second cousin.  And I also

24 received a letter from the defendant's mother, Ella Branks

25 (phonetic).  That's how you pronounce it.  And then I received

1  a letter from Kent Mohr, M-O-H-R.  He is with the prison

2  ministries, as well.  And then attached to that were several

3  certifications and certificates of achievement that the

4  defendant obtained while he has been incarcerated pretrial.

5           I also reviewed all of the victims' statements,

6  and so I'll allude to many of these things as I go through my

7  statement of reasons here.

8           I have used the 2014 guidelines, and no part --

9  nobody has objected to the use of those guidelines.  I will

10  say at the outset that this -- I feel this case is the

11  single-most disturbing case that I've had in 12 or 13 years as

12  a judge.  The victims' statements are really distressing.

13  I'll reference a couple of them and won't belabor the point,

14  but I do think what comes out from them is a young lady who

15  has low self-esteem, for obvious reasons.

16           She answers one question:  "How do you think the

17  existence of the images and videos of the sexual abuse will

18  impact your future?"

19           And she writes that, "I see a lonely future."

20  And she tells me that, "I don't think I'm going to make it

21  very far."

22           Those are just profoundly sad statements from a

23  victim, but no surprise, given the gravity of the conduct at

24  issue in this case.

25           She tells me, in Document 70-3, that the abuse

1  she suffered was, quote, absolutely horrible.  I felt

2  helpless.  I was afraid that he would kill me if I told

3  anybody, so I did my best to cover it up by telling everybody

4  how great he was, referring to the defendant.

5          She tells me in that same document that the

6  defendant, in her mind, is very manipulative and evil, and

7  that he never was a father, he never will be to her.  She

8  tells me that, "My father started touching me not long after I

9  moved in with him.  I'd say about age eight or nine."  And she

10  tells me, in answer to another question that, "My father was

11  manipulative and told me things like, 'Everything we're doing

12  is normal, people used to do it all the time.'"  She tells me

13  that, "My father made promises and offered me gifts to get me

14  to do what he said, and he'd give me candy and chocolate and

15  other things so I'd listen to him."

16          The promises he made were often about these

17  gifts, but she goes on to say that, "He also used threats;

18  such as, telling me that if I ever got pregnant, he'd use

19  a" -- pardon me for saying this -- "use a coat hanger to give

20  me an abortion."  That's what the victim says.

21          So on and on it goes.  I won't belabor the

22  point, but suffice it to say that the Victim Impact Statement

23  in this case is among the most distressing and troubling I've

24  ever received.

25          The defendant was granted custody of his

**BEFORE THE HONORABLE PHILIP P. SIMON**                    70

1    daughter in December of 2008, and it seems rather apparent

2    that almost immediately the sexual abuse of her began.  And

3    for the next five years, he repeatedly sexually abused his own

4    daughter and videotaped it, and he was hurting her while he

5    was doing it.  My review of the tape shows her in anguish and

6    repeatedly asking him to stop and that it was hurting her, but

7    he didn't stop.  He would continue on a routine basis.

8              He then would put these videos online for others

9    to watch.  And as the Government's PowerPoint makes clear,

10   there have been 77 different investigations that have been

11   spawned based on these images alone.  There's more than 10,000

12   separate depictions of the victim that have been found around

13   the country.  Those are just defendants who have happened to

14   have been caught.  Undoubtedly, there are thousands and

15   thousands more depictions of the victim out there in

16   cyberspace, as it were, all over the world.  So the breadth of

17   the crime is truly astonishing.

18             And, you know, on Pages 8 through 12 of the

19   Presentence Report, all of the various acts that were done to

20   the victim by the defendant, her father, are detailed, and I

21   won't repeat them here in open court, but they're

22   unimaginable.

23             Two other little girls were victimized, Jane Doe

24   No. 2 and 3.  In all, there were 472 videos and 6,210 images

25   of these three little girls found on the defendant's computer.

1          The offense was aggravated by the fact that it

2    seems clear, according to Paragraph 29 of the Presentence

3    Report, that the defendant plied his daughter with marijuana,

4    and she essentially became addicted to it.  And that certainly

5    aggravates the offense, in my judgment.

6          What's particularly disturbing to me is in

7    Paragraph 24 of the Presentence Report, in an interview with

8    law enforcement, the defendant described his relationship with

9    his own daughter as, quote, a boyfriend/girlfriend

10   relationship.  This has to be one of the most disturbing

11   aspects of the case, but I think it well shows the defendant's

12   mind-set.

13         In addition to his production of child

14   pornography, he also possessed a boatload of other child

15   pornography.  I believe it was over 80,000 images were found

16   on his computer.  Some of them involve torture of victims and

17   the binding of victims and that sort of thing.

18         The victim in this case, Jane Doe No. 1, reports

19   that she was afraid that he would harm her if she ever

20   disclosed what the defendant was doing to her.  And, in fact,

21   she didn't disclose it.  So his plan worked.  By putting her

22   in fear, she never disclosed this to her own mother or to her

23   grandmother, evidently, who was living in the home with them.

24         Law enforcement only found out about the sexual

25   abuse, as far as I can tell, really, in a roundabout way

1  that's detailed in Paragraphs 5 through 20 of the Presentence

2  Report, and it was simply, what looks like to me, excellent

3  police work that led to the defendant's arrest.

4           The point here is that her comments about not

5  wanting to disclose what was being done to her, because of the

6  fear that she was in, played out over the course of those five

7  years, and the defendant was only apprehended through the

8  actions of law enforcement; again, as it's detailed in

9  Paragraphs 5 through 20 of the Presentence Report, which I

10 won't belabor at this time.

11          You know, it's true that the defendant

12 cooperated with the authorities; but speaking pragmatically,

13 what choice did he have?  There was an abundance of videotapes

14 that showed him doing the very conduct that he was being

15 accused of.  And so there was little to do but to cooperate,

16 but he did cooperate.

17          So this conduct is -- in my judgment, it's

18 dastardly.  Pick an adjective.  He stole his daughter's

19 childhood, and she's going to be affected by this and live

20 with this abuse for the duration of her life.

21          So there's some things in this world which are

22 really unforgivable; and in my judgment, doing harm to a

23 defenseless child, let alone your own child, is one of those

24 things.  So I think this case calls out for a stiff

25 punishment.  And the guidelines, themselves, deliver that, and

1   I agree with them in this case.

2        I will note that I would have given the same

3   sentence that I'm about to give regardless of how the

4   guidelines were computed.  In other words, even if I'm

5   incorrect in how I've computed the guidelines, I would still

6   give the same sentence because even if the defendant is

7   correct on all the guideline issues that we spent an hour

8   talking about this morning, he would still be at a level --

9   the defendant would still be at a Level 51, which is well

10  above the Level 43, which is the maximum of the guidelines in

11  all events.

12       Let me touch on some of the defendant's

13  principal arguments in mitigation.  I have considered the

14  letters from his family and friends, and I commend the

15  defendant for his efforts while he's been incarcerated.  The

16  letters from the prison ministry and the certificates are

17  important steps in attempting to rehabilitate oneself.  But

18  they do not, in my judgment, outweigh the nature of this case,

19  which is the most serious that one could conceivably imagine.

20       You know, he has expressed remorse in this case

21  and cooperated with the government; but again, I think that's

22  tempered by the fact that he really had very little choice

23  given the weight of the evidence against him.

24       I will note that the defendant's own upbringing

25  was horrendous.  The things that his father would do to his

1   mother in his presence, as detailed in the Presentence Report,

2   is unspeakable.  But I can't say that it justifies allowing

3   that cycle to continue to the victim in this case.

4              The defendant has raised criticism of the

5   sentencing guidelines and how they treat child pornography

6   cases, and I very much agree with that under 2G2.2.  I think

7   many of those guideline enhancements -- and I've had many

8   cases where I found that I agree that they make a lot of sense

9   in several cases, but there is a decided difference in my mind

10  between somebody who possesses child pornography on the one

11  hand, it's a bad, a horrible offense, but it's not nearly as

12  bad -- it doesn't even come in the universe of somebody who is

13  actually producing child pornography and then disseminating

14  it.  And so I understand the criticisms that are raised by the

15  defendant of the sentencing guidelines, but I think they miss

16  the mark in a case like this where it involves production over

17  a five-year period of time, just so rampant on, a day -- or

18  nearly day-in, day-out abuse of children.

19              And so I've taken all of those principal

20  arguments into mitigation in the sentence that I am about to

21  announce.

22              I also will just note for the record that I'm

23  denying the defendant's Second Supplemental Sentencing

24  Memorandum, or what they're requesting in there, that any

25  sentence of greater than thirty years be viewed as

1  unconstitutional under the Eighth Amendment of the United

2  States Constitution.  I find no cases to support that concept.

3  And as pointed out by the government in their response, there

4  are many, many Circuit Court cases that have held to the

5  contrary.  And, indeed, I believe there's a Supreme Court case

6  where the possession or distribution of a small amount of

7  cocaine, somebody received a life sentence.  And the Supreme

8  Court said that that wasn't a violation of the Eighth

9  Amendment.  So I can't conceive of how the actions in this

10  case could be an Eighth Amendment violation for the sentence

11  that I'm about to announce.

12            Counsel, have I addressed all of your principal

13  arguments in mitigation?  Mr. Schlesinger?

14            MR. SCHLESINGER:  Yes, sir.

15            THE COURT:  Does either side have any objections not

16  previously addressed or voiced?  Any further elaboration on

17  the sentence that -- I suppose I'll ask that after I formally

18  announce the sentence.

19            All right.  It is the judgment of the Court,

20  pursuant to Title 18, United States Code, Sections 3551 and

21  3553, it's the judgment of the Court that the defendant is

22  hereby committed to the custody of the Bureau of Prisons for a

23  term of 360 months on each of the Counts I through VII, a term

24  of 240 months on Count VIII, and a term of 180 months on Count

25  IX, all to be served consecutive to one another for a total

1  term of 2,280 months.

2         The defendant shall be placed on supervised

3  release for life on all counts.  The terms of the supervised

4  release are to run concurrently pursuant to 18 U.S.C 3624(e).

5  And so that's on Counts I through VII, VIII, and IX.

6         While the defendant is on supervised release, if

7  that ever occurs, pursuant to this judgment, the defendant

8  shall comply with the following mandatory conditions:  He

9  must -- he shall not commit another federal, state, or local

10 crime.  The defendant must report to the probation office in

11 the district to which the defendant is released within 72

12 hours of release from the custody of the Bureau of Prisons.

13 The defendant shall not unlawfully possess a controlled

14 substance and shall refrain from any unlawful use of a

15 controlled substance.  Defendant shall submit to a drug test

16 within 15 days of release of imprisonment and to periodic drug

17 tests thereafter as determined by the Court.  He must

18 cooperate in the collection of DNA as directed by the

19 probation officer.  Defendant shall comply with the

20 requirements of the Sex Offender Registration and Notification

21 Act.  That's under 42 U.S.C 16901, as directed by the

22 probation officer, the Bureau of Prisons, and any state sex

23 offender registration agency in which he resides, works, or is

24 a student, or was convicted of a qualifying offense.

25         The defendant shall comply with the following

1    discretionary conditions:  He shall not leave the judicial

2    district without the permission of the Court or probation

3    officer.  I'm imposing this condition to provide community

4    protection and offender rehabilitation and to enable the

5    probation officer a statutory duty to keep informed concerning

6    the defendant's conduct, condition, and compliance pursuant to

7    18 U.S.C 3553(a)(1),(a)(2)(B), and (C).

8            Second, the defendant shall report to the

9    probation officer in a manner and as frequently as directed by

10   the Court or probation office.  I've given this condition to

11   provide community protection, offender rehabilitation, and

12   officer and offender safety and to enable the probation

13   officer to do his duty of keeping informed of the defendant's

14   conduct, condition, and compliance with supervision.

15           Three, the defendant shall not answer falsely

16   any inquiries by the probation office and should follow the

17   instructions of the probation officer as they relate to the

18   conditions imposed by the Court.  I'm imposing this condition

19   to provide community protection and offender rehabilitation.

20           Next, the defendant shall work at a lawful

21   occupation, unless excused by the probation office for

22   schooling, training, or other acceptable reasons.  I'm

23   imposing this condition -- if the defendant is released,

24   employment is associated with pro-social activities that

25   reduce the risk of recidivism and they provide the offender

1  with rehabilitation as indicated by the social science

2  research.

3          Next, the defendant shall notify the probation

4  officer at least ten days prior to any change in residence or

5  employment.  In the event the defendant is involuntarily

6  terminated from employment or evicted from a residence, the

7  defendant must notify the probation officer within 48 hours of

8  those facts.  I'm imposing this condition because the

9  probation officer needs to know the whereabouts of the

10 defendant.  It's necessary for community protection, officer

11 safety, and to assist with rehabilitation.

12         Next, the defendant shall not knowingly and

13 intentionally be in the presence of anyone who is illegally

14 selling, using, or distributing a controlled substance; and if

15 such activity commences when he is present, the defendant must

16 immediately leave the location.  The defendant has a history

17 of substance abuse, as detailed in the Presentence Report, and

18 frequenting places where illegal, mind-altering substances are

19 being sold, used, or distributed will increase the risk that

20 the defendant will purchase, use, or possess those substances,

21 and so that's the reason I'm giving that condition.

22         Next, the defendant shall not knowingly and

23 intentionally associate with any person engaged in criminal

24 activity.  I'm giving you this condition because the research

25 indicates that -- this sort of obvious fact, that association

1  with peers who are involved in criminal activity increases the

2  risk of recidivism.  This condition also promotes and

3  encourages pro-social relationships that are conducive to

4  law-abiding lifestyles.

5        Next, the defendant shall permit a probation

6  officer to visit him at any time at home or elsewhere and

7  shall permit confiscation of any contraband observed in plain

8  view by the probation officer.  I'm imposing this condition

9  because community contacts with the defendant, if he is ever

10  released, will help the officer to ensure compliance with the

11  court-ordered conditions and assist the defendant in

12  maintaining a law-abiding lifestyle.

13        Next, the defendant shall notify the probation

14  officer within 72 hours of being arrested or questioned by a

15  law enforcement officer.  This is being imposed for community

16  safety and offender rehabilitation.

17        Next, the defendant shall notify the probation

18  officer of any material change in his economic circumstances

19  that might affect his ability to pay any unpaid amount of

20  restitution or special assessments.  I'm imposing this

21  condition because the probation officer can assess the

22  defendant's financial information to ensure the defendant is

23  meeting financial obligations imposed by the Court to make the

24  victim in this case whole.

25        I also order the following special conditions or

1    additional discretionary conditions, whatever the appropriate

2    nomenclature is now:  The defendant shall register with local

3    law enforcement agencies and the state attorney general as

4    directed by the probation office.  Again, this is a

5    requirement under the Sex Offender Registration and

6    Notification Act.

7              Next, at the direction and discretion of the

8    probation office, the defendant shall participate in approved

9    psychological and behavioral testing, evaluation, and

10   assessment programs for the treatment and the monitoring of

11   sex offenders and, if warranted, approved -- sex offender

12   approved and individual counseling program.  I'm able to

13   impose this condition.  If the defendant is released, this

14   offense is a very serious sex offense involving a minor, and

15   the therapeutic needs of the defendant would be met by this

16   condition.  It would help reduce recidivism and protect the

17   public.

18             Finally, I'm going to order that the

19   defendant -- by agreement of the parties, the defendant pay

20   restitution as a condition of his supervision -- as a

21   condition of the sentence, pay restitution to the victim of

22   his offense identified as Jane Doe No. 1 in the amount that

23   has been stipulated to, of $250,000, as agreed to by the

24   parties in Docket Entry No. 73.

25             The parties have asked that I include the

BEFORE THE HONORABLE PHILIP P. SIMON                    81

1    following precise language in the final judgment, which I'll

2    state on the record here first:  Pursuant to the joint motion

3    to include the restitution stipulation in judgment filed by

4    the parties on May 5, 2015, Docket Entry No. 72, the Court

5    hereby orders the defendant to immediately pay $250,000 in

6    victim restitution to the clerk of the court in this judicial

7    district.  The clerk of the court is ordered in turn to

8    disburse upon receipt any funds received from the defendant to

9    victim, Jane Doe No. 1, in care of the Marsh Law Firm, PLLC,

10   Client Trust Account.  Said payment should be made via

11   government check and mailed to following address, the Marsh

12   Law Firm, PLLC, attention Jane.  The P.O. Box is 4668,

13   No. 65135, New York, New York 10163-4668.  And the phone

14   number, to the extent that it's necessary, 212-372-3030.

15               Based on my review of the defendant's financial

16   condition, as detailed in the Presentence Report, I'm going to

17   waive the fine in this case because the defendant does not

18   have the ability to pay the fine and there is an exceedingly

19   large restitution order in this case that I believe to be

20   paramount, in any event.  So the fine will be waived in this

21   case.

22               It is further ordered that the defendant shall

23   pay the United States a total special assessment of $900,

24   which shall be due immediately.

25               Now, the sentence that I've just given is within

1  the advisory guideline range.  That range exceeds 24 months.

2  I've given a sentence within the guideline range for the

3  reasons that I've elaborated on, in detail, prior to my

4  announcement of the sentence.

5          All right.  Does either side have any objections

6  not previously addressed or need any further elaboration on

7  the sentence?

8          Miss Koster?

9          MS. KOSTER:  No, Your Honor.

10         THE COURT:  Mr. Schlesinger?

11         MR. SCHLESINGER:  No, Your Honor.

12         THE COURT:  All right.  I now order the sentence

13  imposed as stated.

14         Mr. Eckstrom, you've heard the judgment of the

15  Court imposing sentence upon you.  Pursuant to Rule 32(j) of

16  the Federal Rules of Criminal Procedure, I advise you, you can

17  appeal your conviction in this chase if you believe your

18  guilty plea was somehow involuntary or there was some other

19  defect in the proceeding or the guilty plea.

20         You also have a statutory right to appeal your

21  sentence under certain circumstances if you think it was

22  contrary to law.  With few exceptions, any notice of appeal

23  must be filed within 14 days of the judgment being entered in

24  your case, if you want to file an appeal.  And if you're

25  unable to pay for the cost of appeal, you may apply for leave

**BEFORE THE HONORABLE PHILIP P. SIMON**                83

1  of appeal in forma pauperis, which means you can pursue the

2  appeal at no cost to you.

3           Mr. Schlesinger, I know you're aware of this,

4  but I just remind you of your duties to perfect an appeal,

5  should your client wish you to do so.  You remain responsible

6  for his representation on appeal unless you're relieved by the

7  Court of Appeals upon motion.

8           Okay.  Anything else from the government?

9           MS. KOSTER:  No, Your Honor.

10          THE COURT:  Anything else from the defendant?

11          MR. SCHLESINGER:  Your Honor, we have a couple

12  requests regarding sentencing.

13          THE COURT:  Sure.

14          MR. SCHLESINGER:  We ask that the defendant be placed

15  at a facility that offers the government Sex Offender Program,

16  SOMP.  Specifically, there are facilities in Marion, Illinois,

17  and Elkton, Ohio, that do that.  Also, that he be -- that the

18  Court recommend he be -- participate in the drug program while

19  he's incarcerated.

20          THE COURT:  Okay.

21          MR. SCHLESINGER:  And that he get credit for time

22  served.

23          THE COURT:  Sure.  I'll make all three of those

24  recommendations; that he be placed in a residential drug

25  treat-- alcohol treatment program, the Sex Offender Program as

1    well, and that he be given credit for time served to the

2    extent possible.  I suppose a preference would be if Marion or

3    Elkton don't offer the ARDAP, that that would be a preference.

4    Is that right, Mr. Schlesinger?

5             MR. SCHLESINGER:  The preference to go for the sex

6    offender program over ARDAP, yes.

7             THE COURT:  Okay.  So I'll detail all of that in the

8    judgment commitment, but I'll recommend Marion, Illinois, or

9    Elkton, Ohio, so the defendant can take advantage of the

10   Bureau of Prisons Sex Offender Treatment Program.

11            All right.  Anything else, Mr. Schlesinger?

12            MR. SCHLESINGER:  No, Your Honor.

13            THE COURT:  All right.  Good luck, Mr. Eckstrom.

14            THE DEFENDANT:  Thank you, Your Honor.  God bless.

15            THE COURT:  Let me just note for the record,

16   Miss Akalaonu, thank you so much for your presentation and for

17   your efforts on behalf of the victim.

18            MS. AKALAONU:  Thank you, Your Honor.

19        (The hearing concludes at 12:55 p.m.)

20                    --oo0oo--

21

22

23

24

25

1              C E R T I F I C A T E

2    I certify that the foregoing is a correct transcript of the

3    record of proceedings in the above-entitled matter.

4

5

6

7

8

9    PAMELA S. OW _____ June 15, 2015

10   PAMELA S. OWEN, CSR, RPR
     Contract Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25