No. 15-2108

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA
Plaintiff – Appellee,

v.

DANIEL T. ECKSTROM
Defendant – Appellant.

---

Appeal from the United States District Court
for the Northern District of Indiana
Case No. 2:13 CR 84
The Honorable Philip Peter Simon
United States District Judge

---

BRIEF AND REQUIRED SHORT APPENDIX
OF DEFENDANT – APPELLANT ECKSTROM DANIEL THOMAS

---

P. Jeffrey Schlesinger
Attorney at Law
8396 Mississippi Street
Suite G
Merrillville, IN 46410
Telephone: (219) 736-5555
Facsimile: (866) 828-7739
pjeffslaw@aol.com

Attorney for Defendant – Appellant
ECKSTROM DANIEL THOMAS

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:   15-2108

Short Caption:   United States v. Eckstrom

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Daniel Thomas Eckstrom

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

P. Jeffrey Schlesinger, Attorney at Law, 8396 Mississippi Street, Suite G, Merrillville, IN 46410

(3) If the party or amicus is a corporation:

i)      Identify all its parent corporations, if any; and
        N/A

ii)     list any publicly held company that owns 10% or more of the party's or amicus' stock:
        N/A

---

Attorney's Signature: Date:   /s/ P. Jeffrey Schlesinger                          Date: June 30, 2015

Attorney's Printed Name:      P. Jeffrey Schlesinger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes X**   No

Address: 8396 Mississippi Street, Suite G, Merrillville, IN 46410

Phone Number: 219-736-5555                          Fax Number: 866-828-7739

E-Mail Address: pjeffslaw@aol.com

rev. 01/08 AK

## TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT………………………………………………………………1

ISSUE PRESENTED FOR REVIEW……………………………………………………...………...1

STATEMENT OF THE CASE………………………………………………………………..1-3

      1.  Nature of the Case…………………………………………………………....1-2

      2.  Relevant Facts and Proceedings in the District Court……………………………..3

SUMMARY OF ARGUMENT………………………………………………………………..3-4

ARGUMENT………………………………………………………………………………..4-7

CONCLUSION………………………………………………………………………...7-8

CERTIFICATE OF COMPLIANCE………………………………………………………………9

CIRCUIT RULE 30(D) STATEMENT……………………………………………………………10

CERTIFICATE OF SERVICE……………………………………………………………………11

APPENDIX………………………………………………………………………………1-26

      JUDGMENT…………………………………………………………………………..1-6

      TRANSCRIPT OF DISTRICT COURT RULING AT SENTENCING…………....7-26

# TABLE OF AUTHORITIES

## Constitutions

United States Constitution, Eighth Amendment……………………………………………..1, 7

## Cases

*Gall v. United States*, 552 U.S. 38, 51 (2007)……………………………………………..4, 5

*United States v. Olsen*, 450 F. 3d. 655, 686 (7th Cir. 2006)……………………………...4

*Whitman v. Nesic*, 368 F. 3d. 931, 934 (7th Cir. 2004)…………………………………...4

*Henry v. Page*, 223 F. 3d. 477, 482 (7th Cir. 2000), *cert. denied,* (532 U.S. 959, 2001)……..4

*United States v. Hawk*, 434 F. 3d. 959, 963 (7th Cir. 2006)…………………………….....5

*United States v. Schmitt*, 495 F. 3d. 860, 864 (7th Cir. 2007)………………………….....5

*United States v. Busa*, 551 F. 3d. 669, 674 (7th Cir. 2008)……………………………….5

*United States v. Johnson*, 471 F. 3d. 764, 766 (7th Cir. 2006)……………………………5

*United States v. Kane*, 552 F. 3d. 748, 752 (8th Cir. 2009)……………………….......5

*United States v. Spann*, 757 F. 3d. 674, 675 (7th Cir. 2014)……………………………..5

## Federal Statutes

18 U.S.C. §3231…………………………………………………………………..;1

18 U.S.C. §2251 and 2252…………………………………………………………….1

28 U.S.C. §1291 and 1294……………………………………………………………..1

18 U.S.C. §3742(a)(1) and (2)………………………………………………………...1

18 U.S.C. §3553……………………………………………………………1, 3, 4, 5, 6

## Federal Rules

Fed. R. Crim. Pro. 18………………………………………………………………1

iii

**<u>Sentencing Guidelines</u>**

U.S.S.G., 5A n. 2……………………………………………………………………………..7

## JURISDICTIONAL STATEMENT

This is a direct appeal from a judgment in a criminal case entered by the United States District Court, Northern District of Indiana, Hammond Division.  Specifically, this is an appeal challenging the sentence imposed by the district court.

The United States District Court for the Northern District of Indiana had original jurisdiction pursuant to 18 U.S.C. §3231 which provides exclusive jurisdiction for offenses against the United States, and Fed. R. Crim. Pro. 18.  The underlying indictment in this case charged Appellant Daniel Eckstrom with multiple offenses in violation of Title 18, United States Code §§2251 and 2252.  The United States Court of Appeals for the Seventh Circuit has appellate jurisdiction pursuant to 28 U.S.C. §§1291 and 1294 and 18 U.S.C. §3742(a)(1) and (2). Mr. Eckstrom challenges his sentence as violating the Eight Amendment to the United States Constitution. This appeal is from a final judgement of conviction and sentence entered on May 18, 2015.  Mr. Eckstrom filed a timely Notice of Appeal on May 20, 2015.

## ISSUE PRESENTED FOR REVIEW

Whether the sentencing considerations in 18 U.S.C. §3553 and the Eighth Amendment to the United States Constitution prohibit the sentence of two thousand eight hundred eighty months which the District Court imposed upon Mr. Eckstrom.

## STATEMENT OF THE CASE

### 1.  Nature of the case

The Indictment filed in this case against Mr. Eckstrom contained seven Counts of Production of Child Pornography.  The first five counts involved the same victim (identified in

1

the Indictment as Jane Doe 1). Count One of the Indictment alleged that between January 1, 2009 and on or about December 31, 2009 Mr. Eckstrom attempted to and did knowingly employ, use, persuade, induce, entice and coerce Jane Doe 1 who was eight to nine years old at that time to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, where such visual depiction was produced using materials that had been mailed, shipped, transported and affecting interstate commerce by any means. Counts Two through Five charged the same conduct with Jane Doe 1 with each count specifying a different year from 2010 through 2013.

Count Six charged Mr. Eckstrom with knowingly employ, use, persuade, induce, entice and coerce a different child, Jane Doe 2, who was six to seven years old at the time to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct. Count Seven involved a third victim, Jane Doe 3 who was nine to ten years old at the time. The offense was alleged to have been committed between January 1, 2012 and on or about December 31, 2012. Lists of images and videos and dates of production was also included in each count.

Count Eight charged Eckstrom with knowingly distributing, using any means of facility of interstate foreign commerce, one or more visual depictions of actual minors under the age of eighteen engaging in sexual explicit conduct between January 1, 2012 and on or about May 23, 2013. Count Nine alleged that Mr. Eckstrom knowingly possessed one or more matters containing visual depictions which had been mailed, or had been shipped and transported in an affecting interstate foreign commerce, by any means including by computer, where the producing of each visual depiction involved the use of actual minors under the age of eighteen engaged in sexually explicit conduct on or about May 23, 2013.

2

## 2.    Relevant Facts and Proceedings in the District Court

Mr. Eckstrom changed his plea to guilty on all counts without the benefit of a plea agreement on January 7, 2014.  After several continuances, a sentencing hearing was held on May 12, 2015.  Following presentation of evidence and arguments by counsel, the court calculated a guideline range of 43 pursuant to the United States Sentencing Guidelines which recommended life imprisonment.  The court then sentenced Mr. Eckstrom to the maximum term for each count, three hundred sixty months on each of Counts One to Seven, two hundred forty months on Count Eight and one hundred twenty months on Count Nine and ordered all terms to be served consecutively for a total sentence of two thousand eight hundred eighty months.  [1]

## SUMMARY OF ARGUMENT

The United States Code and Sentencing Guidelines mandate strict punishment for any individual involved in production, distribution or possession of child pornography.  Children are certainly among the most vulnerable victims of crimes and deserve protection.  Most individuals are extremely offended by anyone who would produce, distribute or possess child pornography.

Acknowledging strong visceral feelings by the public, the judiciary has an obligation to consider rationally factors set forth in 18 U.S.C. §3553 when imposing sentence.  The nature and circumstances of the offense are one factor, but no matter how egregious the offense is, it should not preclude consideration of the history and characteristics of the defendant.  Furthermore, the

---

[1] The transcript of the sentencing hearing indicates the total sentence is two thousand two hundred eighty months, but addition of the individual terms and the written judgment show the total sentence to be two thousand eight hundred eighty months.  (STR. 76).

3

statute requires that any sentence imposed be sufficient, but not greater than necessary, to comply with the purposes set forth therein. Mr. Eckstrom believes that his sentence is so severe that the trial court could not have properly considered his history or characteristics. Furthermore, the sentence is so severe that it violates the Eighth Amendment prohibition against cruel and unusual punishment.

**ARGUMENT**

**A. Standard of Review**

The Court of Appeals reviews sentencing decisions for reasonableness, applying the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

**B. Argument**

The Eighth Amendment to the United States Constitution prohibits punishments which involve the unnecessary wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penalogical justification. *United States v. Olsen*, 450 F. 3d. 655, 686 (7th Cir. 2006) citing *Whitman v. Nesic*, 368 F. 3d. 931, 934 (7th Cir. 2004) and *Henry v. Page*, 223 F. 3d. 477, 482 (7th Cir. 2000), *cert. denied,* (532 U.S. 959, 2001). In non-capital felony convictions, a particular sentence that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing court abused its discretion. *Olsen, supra*.

18 U.S.C. §3553(a) authorizes only sentences that are "sufficient, but not greater than

necessary, to comply with the purposes" of sentencing. Those purposes include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal activity, protect the public, and provide effective education, training, and treatment. 18 U.S.C. §3553(a)(2). When determining a reasonable sentence, the court must consider various factors listed in 18 U.S.C. §3553(a) including the advisory sentencing guideline, which it may not presume is reasonable. *United States v. Hawk*, 434 F. 3d. 959, 963 (7th Cir. 2006); *United States v. Schmitt*, 495 F. 3d. 860, 864 (7th Cir. 2007).

Mr. Eckstrom acknowledges that it is perfectly acceptable for courts to assign various weights to the factors as they deem appropriate in the context of each case. *United States v. Busa*, 551 F. 3d. 669, 674 (7th Cir. 2008). However, a court's weighing of those factors must be "within the bounds of reason". *Id.* quoting *United States v. Johnson*, 471 F. 3d. 764, 766 (7th Cir. 2006). A trial court may abuse its discretion when imposing sentence when, "(1) a court fails to consider a relevant factor which should have received weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a clear error of judgment". *United States v. Kane*, 552 F. 3d. 748, 752 (8th Cir. 2009). Mr. Eckstrom contends that the court failed to consider his lack of criminal history and efforts at rehabilitation as relevant factors which should have received significant weight, and committed an error of judgement when weighing appropriate factors.

"The judge must justify, by reference to the sentencing factors in 18 U.S.C. §3553(a), the sentence he imposes – and must do so whether it is inside or outside the applicable guidelines range." *United States v. Spann*, 757 F. 3d. 674, 675 (7th Cir. 2014); citing *Gall v. United States,* 552 U.S. 38, 49-50 (2007). In Mr. Eckstrom's case, the trial judge seems to have based the

5

sentence upon his personal repulsion of Mr. Eckstrom's conduct. The judge referred to this as "the single most disturbing case that I've had in twelve or thirteen years as a judge". (App. 3). He also referred to the nature of the offense as "unimaginable" (App. 5), "dastardly" (App. 7), and "unforgivable" (App. 8).

Mr. Eckstrom agrees that the facts of this offense were particularly heinous, but that does not give the trial judge license to sentence based upon the nature of the crime alone and ignore the other factors in 18 U.S.C. §3553. The judge failed to explain how the sentence would promote respect for the law or deter criminal activity either from Mr. Eckstrom or the public in general. The judge also did not explain why a sentence of two thousand eight hundred eighty months was sufficient, but not greater than necessary. It appears as though a sentence one quarter as long or seven hundred twenty months would have equally served all of the purposes of 18 U.S.C. §3553.

The imposition of a maximum sentence also gives Mr. Eckstrom no benefit for acceptance of responsibility. The United States Sentencing Guidelines gives a criminal defendant a reduction in sentence in acknowledgment of his accepting responsibility of his behavior. The adoption of the United States Sentencing Guidelines by the legislature is a clear indication that the legislature supported a policy to give a defendant in a criminal case a reduced sentence if they admitted their crimes. The benefit to the government from this provision is obvious in that it saves considerable time and resources when prosecuting a criminal defendant. In this case, Mr. Eckstrom admitted that he was guilty of all charged offenses in a timely fashion thereby saving the government time and expense of a trial. Mr. Eckstrom also identified other

6

individuals with whom he had shared child pornography permitting additional prosecutions and limiting the future distribution of large amounts of child pornography.

The Pre-Sentence Report recommended that Mr. Eckstrom receive a reduction of the maximum permissible three levels in his guideline range as an indication of his acceptance of responsibility.  Despite the recommendation, Mr. Eckstrom received no credit for his acceptance of responsibility.  His original guideline ranges calculated was 58 and with the three level reduction it would have been 55.  The guidelines provide that any range greater than 43 is reduced to 43 which is a recommendation of a life sentence.  (U.S.S.G., 5A n.2)

In addition, Mr. Eckstrom used the period of time between his arrest and sentencing, almost two years, to work toward rehabilitation.  By imposing the maximum sentence, Mr. Eckstrom received no credit whatsoever for his acceptance of responsibility.  The court thereby failed to acknowledge the character of the offender.  This sentence has policy implications beyond Mr. Eckstrom.  If any criminal defendant has a guideline range above 45, there is no incentive to plead guilty.  In a child pornography case, a plea of guilty not only saves the government time and money, but spares the victims the possibility of testifying, and the prospect of reliving their abuse in the media.  The fact that he admitted his conduct early and consistently, demonstrates the desire of Mr. Eckstrom to alter his conduct, another fact which receives no consideration from the trial court.

**CONCLUSION**

The district court violated the Eighth Amendment's prohibition against cruel and unusual punishment when sentencing Daniel Eckstrom to a term of incarceration of two hundred forty

years, the maximum for the crimes with which he was charged.  The court also violated the intent of the United States Sentencing Guidelines by failing to give Mr. Eckstrom any credit for acceptance of responsibility.  Finally, the court erred in basing its sentence solely on the nature of the crime and not giving adequate consideration to the characteristics of Mr. Eckstrom.  Mr. Eckstrom seeks reward and reversal of his sentence.  Mr. Eckstrom additionally seeks any other relief deemed necessary.

        DATED:        June 30, 2015                Respectfully submitted,

                                                  */s/ P. Jeffrey Schlesinger*
                                                  P. Jeffrey Schlesinger
                                                  Attorney for Defendant-Appellant
                                                  Daniel Thomas Eckstrom

P. Jeffrey Schlesinger
Attorney at Law
8396 Mississippi Street, Suite G
Merrillville, IN 46410
Telephone: (219) 736-5555
Facsimile: (866) 828-7739
pjeffslaw@aol.com

8

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)

The Defendant-Appellant's principal brief does not exceed 30 in length.  Accordingly, no Certificate of Compliance with Fed.R.App.P. 32(a)(7) is required.


Dated: June 30, 2015                                    Respectfully submitted,

                                                        _/s/ P. Jeffrey Schlesinger_
                                                        P. Jeffrey Schlesinger
                                                        Attorney for Defendant-Appellant
                                                        Daniel Thomas Eckstrom

9

## CIRCUIT RULE 30(D) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required Circuit Rule

30(a) and (b) are included in the Appendix.


Dated: June 30, 2015                                     Respectfully submitted,

                                                         */s/ P. Jeffrey Schlesinger*
                                                         P. Jeffrey Schlesinger
                                                         Attorney for Defendant-Appellant
                                                         Daniel Thomas Eckstrom

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2015, I electronically filed the Appellant's Brief and Appendix with the Clerk of the Court using the CM/ECF system and sent copies of such filings to the following:

Jill Koster

Respectfully submitted,

*/s/ P. Jeffrey Schlesinger*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

        **Plaintiff,**

  vs.

**DANIEL THOMAS ECKSTROM**

        **Defendant.**

CASE NUMBER: 2:13CR84-001

USM Number: 12819-027

**PAUL JEFFREY SCHLESINGER**
DEFENDANT'S ATTORNEY

## JUDGMENT IN A CRIMINAL CASE

THE DEFENDANT pleaded guilty to counts 1 - 9 of the Indictment on 1/7/2014.
ACCORDINGLY, the court has adjudicated that the defendant is guilty of the following offenses:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18:2251(a) AND 18:2 PRODUCTION OF CHILD PORNOGRAPHY AND AIDING AND ABETTING | May 24, 2013 | 1-7 |
| 18:2252(a)(2) RECEIPT OF CHILD PORNOGRAPHY | May 24, 2013 | 8 |
| 18:2252(a)(4) POSSESSION OF CHILD PORNOGRAPHY AND 18:2251 AND 2253 SEXUAL EXPLOITATION FORFEITURE ALLEGATIONS | May 24, 2013 | 9 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

May 12, 2015
Date of Imposition of Judgment

s/ Philip P. Simon
Signature of Judge

Philip P. Simon, Chief United States District Judge
Name and Title of Judge

May 18, 2015
Date

Defendant: DANIEL THOMAS ECKSTROM                                          Page 2 of 6
Case Number: 2:13CR84-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **2,880 months. This term consists of the following:**
360 months on each of Counts 1 – 7, 240 months on Count 8, 120 months on Count 9, all terms to be served **consecutively.**

The Court makes the following recommendations to the Bureau of Prisons:

> (1) That the defendant be placed in a BOP facility that offers the SOMP (Sex Offender Management Program). Counsel for the defendant specifically noted the facilities at Marion and Elkton.
> (2) That the defendant have the opportunity to participate in the RDAP Program.
> (3) That the defendant receive credit for time served.
> (Note: defense counsel notes that the SOMP program is a priority over the RDAP program if both programs are not available at one facility.

The defendant is REMANDED to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

    Defendant delivered _____ to _____ at _____,
with a certified copy of this judgment.

                                        _____
                                        UNITED STATES MARSHAL

                    By: _____
                               DEPUTY UNITED STATES MARSHAL

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of LIFE. This term consists of LIFE on each count, to be served concurrently.

The defendant shall not commit another federal, state or local crime.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance.

The defendant shall submit to one drug test within 15 days of release from imprisonment and two (2) periodic drug tests thereafter, as determined by the court.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The defendant shall comply with the requirement of the Sex Offender Registration and Notification Act (42 U.S.C. Section 16901, et seq), as directed by the probation officer, the Bureau of Prisons, and any state sex offender registration agency in which he resides, works, or is a student, or was convicted of a qualifying offense.

## DISCRETIONARY CONDITIONS

The defendant shall not leave the judicial district without the permission of the court or probation officer.

The defendant shall report to the probation officer in the manner and as frequently as directed by the court or probation officer.

The defendant shall not answer falsely any inquiries by the probation officer and follow the instructions of the probation officer as they relate to the conditions imposed by the court.

The defendant shall work at a lawful occupation, unless excused by the probation officer for schooling, training or other acceptable reasons, i.e., childcare, eldercare, disability, age, and serious health condition.

The defendant shall notify the probation officer at least ten days prior to any change in residence or employer. In the event that a defendant is involuntarily terminated from employment or evicted from a residence, the offender must notify the probation officer within forty-eight (48) hours.

The defendant shall not knowingly and intentionally be in the presence of anyone who is illegally selling, using or distributing a controlled substance and if such activity commences when he is present, the defendant must immediately leave the location.

The defendant shall not knowingly and intentionally associate with any persons engaged in criminal activity.

The defendant shall permit a probation officer to visit him at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

The defendant shall notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law enforcement officer.

The defendant shall notify the probation officer of any material change in his economic circumstances that might affect his ability to pay any unpaid amount of restitution, fines or special assessments.

FURTHER, the defendant shall comply with the following **SPECIAL CONDITIONS:**

The defendant shall register with local law enforcement agencies and the state attorney general, as directed by the probation officer.

At the direction and discretion of the probation officer, the defendant shall participate in an approved psychological and behavioral testing, evaluation, and assessment program for the treatment and monitoring of sex offenders and if warranted, an approved sex-offender group and individual counseling program. The defendant shall comply with all of the requirements and restrictions of those programs and pay the costs of these rehabilitative programs if financially able to do so.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| <u>Total Assessment</u> | <u>Total Fine</u> | <u>Total Restitution</u> |
|:---:|:---:|:---:|
| $900.00 | NONE | $250,000 |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320. The special assessment payment shall be due immediately.

### FINE

No fine imposed.

### RESTITUTION

Restitution in the amount of $250,000 to victim Jane Doe 1 is hereby imposed.

Pursuant to the "Joint Motion to Include Restitution Stipulation in Judgment" filed by the parties on May 5, 2015, Docket Entry #73, the Court hereby ORDERS defendant to immediately pay $250,000.00 in victim restitution to the Clerk of the Court in this judicial district. The Clerk of the Court is ORDERED, in turn, to disburse upon receipt any funds received from defendant to victim Jane Doe 1, care of the Marsh Law Firm PLLC Client Trust Account. Said payments should be made via government check and mailed to the following address:

The Marsh Law Firm PLLC
Attn: Jane
P.O. Box 4668 #65135
New York, NY 10163-4668
Phone:  (212) 372-3030

The defendant shall make restitution payments payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320, for the following payees in the amounts listed below.

| <u>Name of Payee</u> | <u>Amount of Restitution<br>Ordered</u> |
|:---:|:---:|
| JANE DOE 1 | 250,000.00 |

Name: <u>DANIEL THOMAS ECKSTROM</u>
Docket No.: <u>2:13CR84-001</u>

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein. These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____        _____
Defendant                                                             Date


_____        _____
U.S. Probation Officer/Designated Witness           Date

1  a sentence that is the only sentence in this case that truly

2  accomplishes the factors set forth maintaining this 3553(a).

3  We ask Your Honor to sentence the defendant to a

4  life-equivalent sentence. Thank you.

5  THE COURT: All right. As we know, the Supreme Court

6  has modified the Federal Sentencing Act and made the

7  Sentencing Guidelines advisory. Prior to "United States v.

8  Booker," the guidelines were mandatory, and the judges, like

9  myself, had to follow the guidelines. But Booker demoted the

10  guidelines from a mandatory document to advisory instead.

11  So I certainly have to take the sentencing

12  guidelines into consideration when I render a sentence, but

13  I'm also required to consider all of the other factors under

14  3553(a) in arriving at what is hopefully a reasonable and

15  appropriate sentence given all the circumstances.

16  I cannot arrive at a sentence with a thumb on

17  the scale in favor of the guidelines; in other words, the

18  guidelines are neither more important nor less important than

19  all of the other factors. So in addition to the sentencing

20  guidelines, I have to take into account the nature of the

21  circumstances of the offense, the history and characteristics

22  of the defendant. The sentence that I impose must reflect the

23  seriousness of the offense, it must promote respect for the

24  law, and it must provide just punishment for the offense. And

25  I have to be concerned in imposing a sentence that will deter

1  criminal activity, both specific deterrence, protecting the

2  public from further crimes of the defendant, himself; but also

3  the concept of general deterrence, so that the sentence will

4  adequately deter criminal activity in general.

5        The sentence that I give must attempt to avoid

6  unwarranted sentencing disparities among similarly situated

7  defendants.  And ultimately, the goal is to arrive at a

8  sentence that is sufficient, but not greater than necessary,

9  to achieve the statutory goals of sentencing.

10       In preparing for the sentencing hearing, as I

11 mentioned at the outset of the hearing, I reviewed all of the

12 material that was presented to me; but in particular, the

13 defendant filed a Supplemental Sentencing Memorandum, wherein

14 there were several letters attached.  The first letter was

15 from the defendant, himself.  I also received a letter from a

16 Sharon Knight.  I received a letter from somebody within the

17 jail ministry; his name is just Greg.  I received a letter

18 from a Doyle Buckner, who's the chaplain at the Kankakee

19 facility.  I received a letter from another person in -- or

20 member of the prison ministry.  His name is J. Bournes.  I

21 received a letter from Marcy Brinkman, who is the defendant's

22 aunt and godmother.  I received a letter from Laura Reaux

23 (phonetic).  That's the defendant's second cousin.  And I also

24 received a letter from the defendant's mother, Ella Branks

25 (phonetic).  That's how you pronounce it.  And then I received

**BEFORE THE HONORABLE PHILIP P. SIMON**

1  a letter from Kent Mohr, M-O-H-R.  He is with the prison

2  ministries, as well.  And then attached to that were several

3  certifications and certificates of achievement that the

4  defendant obtained while he has been incarcerated pretrial.

5          I also reviewed all of the victims' statements,

6  and so I'll allude to many of these things as I go through my

7  statement of reasons here.

8          I have used the 2014 guidelines, and no part --

9  nobody has objected to the use of those guidelines.  I will

10  say at the outset that this -- I feel this case is the

11  single-most disturbing case that I've had in 12 or 13 years as

12  a judge.  The victims' statements are really distressing.

13  I'll reference a couple of them and won't belabor the point,

14  but I do think what comes out from them is a young lady who

15  has low self-esteem, for obvious reasons.

16          She answers one question:  "How do you think the

17  existence of the images and videos of the sexual abuse will

18  impact your future?"

19          And she writes that, "I see a lonely future."

20  And she tells me that, "I don't think I'm going to make it

21  very far."

22          Those are just profoundly sad statements from a

23  victim, but no surprise, given the gravity of the conduct at

24  issue in this case.

25          She tells me, in Document 70-3, that the abuse

**BEFORE THE HONORABLE PHILIP P. SIMON**

1  she suffered was, quote, absolutely horrible.  I felt

2  helpless.  I was afraid that he would kill me if I told

3  anybody, so I did my best to cover it up by telling everybody

4  how great he was, referring to the defendant.

5           She tells me in that same document that the

6  defendant, in her mind, is very manipulative and evil, and

7  that he never was a father, he never will be to her.  She

8  tells me that, "My father started touching me not long after I

9  moved in with him.  I'd say about age eight or nine."  And she

10  tells me, in answer to another question that, "My father was

11  manipulative and told me things like, 'Everything we're doing

12  is normal, people used to do it all the time.'"  She tells me

13  that, "My father made promises and offered me gifts to get me

14  to do what he said, and he'd give me candy and chocolate and

15  other things so I'd listen to him."

16           The promises he made were often about these

17  gifts, but she goes on to say that, "He also used threats;

18  such as, telling me that if I ever got pregnant, he'd use

19  a" -- pardon me for saying this -- "use a coat hanger to give

20  me an abortion."  That's what the victim says.

21           So on and on it goes.  I won't belabor the

22  point, but suffice it to say that the Victim Impact Statement

23  in this case is among the most distressing and troubling I've

24  ever received.

25           The defendant was granted custody of his

1  daughter in December of 2008, and it seems rather apparent

2  that almost immediately the sexual abuse of her began.  And

3  for the next five years, he repeatedly sexually abused his own

4  daughter and videotaped it, and he was hurting her while he

5  was doing it.  My review of the tape shows her in anguish and

6  repeatedly asking him to stop and that it was hurting her, but

7  he didn't stop.  He would continue on a routine basis.

8          He then would put these videos online for others

9  to watch.  And as the Government's PowerPoint makes clear,

10  there have been 77 different investigations that have been

11  spawned based on these images alone.  There's more than 10,000

12  separate depictions of the victim that have been found around

13  the country.  Those are just defendants who have happened to

14  have been caught.  Undoubtedly, there are thousands and

15  thousands more depictions of the victim out there in

16  cyberspace, as it were, all over the world.  So the breadth of

17  the crime is truly astonishing.

18          And, you know, on Pages 8 through 12 of the

19  Presentence Report, all of the various acts that were done to

20  the victim by the defendant, her father, are detailed, and I

21  won't repeat them here in open court, but they're

22  unimaginable.

23          Two other little girls were victimized, Jane Doe

24  No. 2 and 3.  In all, there were 472 videos and 6,210 images

25  of these three little girls found on the defendant's computer.

**BEFORE THE HONORABLE PHILIP P. SIMON**

1    The offense was aggravated by the fact that it

2   seems clear, according to Paragraph 29 of the Presentence

3   Report, that the defendant plied his daughter with marijuana,

4   and she essentially became addicted to it.  And that certainly

5   aggravates the offense, in my judgment.

6    What's particularly disturbing to me is in

7   Paragraph 24 of the Presentence Report, in an interview with

8   law enforcement, the defendant described his relationship with

9   his own daughter as, quote, a boyfriend/girlfriend

10  relationship.  This has to be one of the most disturbing

11  aspects of the case, but I think it well shows the defendant's

12  mind-set.

13    In addition to his production of child

14  pornography, he also possessed a boatload of other child

15  pornography.  I believe it was over 80,000 images were found

16  on his computer.  Some of them involve torture of victims and

17  the binding of victims and that sort of thing.

18    The victim in this case, Jane Doe No. 1, reports

19  that she was afraid that he would harm her if she ever

20  disclosed what the defendant was doing to her.  And, in fact,

21  she didn't disclose it.  So his plan worked.  By putting her

22  in fear, she never disclosed this to her own mother or to her

23  grandmother, evidently, who was living in the home with them.

24    Law enforcement only found out about the sexual

25  abuse, as far as I can tell, really, in a roundabout way

12

1    that's detailed in Paragraphs 5 through 20 of the Presentence

2    Report, and it was simply, what looks like to me, excellent

3    police work that led to the defendant's arrest.

4              The point here is that her comments about not

5    wanting to disclose what was being done to her, because of the

6    fear that she was in, played out over the course of those five

7    years, and the defendant was only apprehended through the

8    actions of law enforcement; again, as it's detailed in

9    Paragraphs 5 through 20 of the Presentence Report, which I

10   won't belabor at this time.

11             You know, it's true that the defendant

12   cooperated with the authorities; but speaking pragmatically,

13   what choice did he have?  There was an abundance of videotapes

14   that showed him doing the very conduct that he was being

15   accused of.  And so there was little to do but to cooperate,

16   but he did cooperate.

17             So this conduct is -- in my judgment, it's

18   dastardly.  Pick an adjective.  He stole his daughter's

19   childhood, and she's going to be affected by this and live

20   with this abuse for the duration of her life.

21             So there's some things in this world which are

22   really unforgivable; and in my judgment, doing harm to a

23   defenseless child, let alone your own child, is one of those

24   things.  So I think this case calls out for a stiff

25   punishment.  And the guidelines, themselves, deliver that, and

**BEFORE THE HONORABLE PHILIP P. SIMON**

1  I agree with them in this case.

2          I will note that I would have given the same

3  sentence that I'm about to give regardless of how the

4  guidelines were computed.  In other words, even if I'm

5  incorrect in how I've computed the guidelines, I would still

6  give the same sentence because even if the defendant is

7  correct on all the guideline issues that we spent an hour

8  talking about this morning, he would still be at a level --

9  the defendant would still be at a Level 51, which is well

10  above the Level 43, which is the maximum of the guidelines in

11  all events.

12          Let me touch on some of the defendant's

13  principal arguments in mitigation.  I have considered the

14  letters from his family and friends, and I commend the

15  defendant for his efforts while he's been incarcerated.  The

16  letters from the prison ministry and the certificates are

17  important steps in attempting to rehabilitate oneself.  But

18  they do not, in my judgment, outweigh the nature of this case,

19  which is the most serious that one could conceivably imagine.

20          You know, he has expressed remorse in this case

21  and cooperated with the government; but again, I think that's

22  tempered by the fact that he really had very little choice

23  given the weight of the evidence against him.

24          I will note that the defendant's own upbringing

25  was horrendous.  The things that his father would do to his

1  mother in his presence, as detailed in the Presentence Report,

2  is unspeakable.  But I can't say that it justifies allowing

3  that cycle to continue to the victim in this case.

4          The defendant has raised criticism of the

5  sentencing guidelines and how they treat child pornography

6  cases, and I very much agree with that under 2G2.2.  I think

7  many of those guideline enhancements -- and I've had many

8  cases where I found that I agree that they make a lot of sense

9  in several cases, but there is a decided difference in my mind

10 between somebody who possesses child pornography on the one

11 hand, it's a bad, a horrible offense, but it's not nearly as

12 bad -- it doesn't even come in the universe of somebody who is

13 actually producing child pornography and then disseminating

14 it.  And so I understand the criticisms that are raised by the

15 defendant of the sentencing guidelines, but I think they miss

16 the mark in a case like this where it involves production over

17 a five-year period of time, just so rampant on, a day -- or

18 nearly day-in, day-out abuse of children.

19         And so I've taken all of those principal

20 arguments into mitigation in the sentence that I am about to

21 announce.

22         I also will just note for the record that I'm

23 denying the defendant's Second Supplemental Sentencing

24 Memorandum, or what they're requesting in there, that any

25 sentence of greater than thirty years be viewed as

1  unconstitutional under the Eighth Amendment of the United

2  States Constitution.  I find no cases to support that concept.

3  And as pointed out by the government in their response, there

4  are many, many Circuit Court cases that have held to the

5  contrary.  And, indeed, I believe there's a Supreme Court case

6  where the possession or distribution of a small amount of

7  cocaine, somebody received a life sentence.  And the Supreme

8  Court said that that wasn't a violation of the Eighth

9  Amendment.  So I can't conceive of how the actions in this

10  case could be an Eighth Amendment violation for the sentence

11  that I'm about to announce.

12          Counsel, have I addressed all of your principal

13  arguments in mitigation?  Mr. Schlesinger?

14          MR. SCHLESINGER:  Yes, sir.

15          THE COURT:  Does either side have any objections not

16  previously addressed or voiced?  Any further elaboration on

17  the sentence that -- I suppose I'll ask that after I formally

18  announce the sentence.

19          All right.  It is the judgment of the Court,

20  pursuant to Title 18, United States Code, Sections 3551 and

21  3553, it's the judgment of the Court that the defendant is

22  hereby committed to the custody of the Bureau of Prisons for a

23  term of 360 months on each of the Counts I through VII, a term

24  of 240 months on Count VIII, and a term of 180 months on Count

25  IX, all to be served consecutive to one another for a total

16

1  term of 2,280 months.

2          The defendant shall be placed on supervised

3  release for life on all counts.  The terms of the supervised

4  release are to run concurrently pursuant to 18 U.S.C 3624(e).

5  And so that's on Counts I through VII, VIII, and IX.

6          While the defendant is on supervised release, if

7  that ever occurs, pursuant to this judgment, the defendant

8  shall comply with the following mandatory conditions:  He

9  must -- he shall not commit another federal, state, or local

10  crime.  The defendant must report to the probation office in

11  the district to which the defendant is released within 72

12  hours of release from the custody of the Bureau of Prisons.

13  The defendant shall not unlawfully possess a controlled

14  substance and shall refrain from any unlawful use of a

15  controlled substance.  Defendant shall submit to a drug test

16  within 15 days of release of imprisonment and to periodic drug

17  tests thereafter as determined by the Court.  He must

18  cooperate in the collection of DNA as directed by the

19  probation officer.  Defendant shall comply with the

20  requirements of the Sex Offender Registration and Notification

21  Act.  That's under 42 U.S.C 16901, as directed by the

22  probation officer, the Bureau of Prisons, and any state sex

23  offender registration agency in which he resides, works, or is

24  a student, or was convicted of a qualifying offense.

25          The defendant shall comply with the following

17

1  discretionary conditions:  He shall not leave the judicial

2  district without the permission of the Court or probation

3  officer.  I'm imposing this condition to provide community

4  protection and offender rehabilitation and to enable the

5  probation officer a statutory duty to keep informed concerning

6  the defendant's conduct, condition, and compliance pursuant to

7  18 U.S.C 3553(a)(1),(a)(2)(B), and (C).

8          Second, the defendant shall report to the

9  probation officer in a manner and as frequently as directed by

10  the Court or probation office.  I've given this condition to

11  provide community protection, offender rehabilitation, and

12  officer and offender safety and to enable the probation

13  officer to do his duty of keeping informed of the defendant's

14  conduct, condition, and compliance with supervision.

15          Three, the defendant shall not answer falsely

16  any inquiries by the probation office and should follow the

17  instructions of the probation officer as they relate to the

18  conditions imposed by the Court.  I'm imposing this condition

19  to provide community protection and offender rehabilitation.

20          Next, the defendant shall work at a lawful

21  occupation, unless excused by the probation office for

22  schooling, training, or other acceptable reasons.  I'm

23  imposing this condition -- if the defendant is released,

24  employment is associated with pro-social activities that

25  reduce the risk of recidivism and they provide the offender

18

# BEFORE THE HONORABLE PHILIP P. SIMON

1  with rehabilitation as indicated by the social science

2  research.

3          Next, the defendant shall notify the probation

4  officer at least ten days prior to any change in residence or

5  employment.  In the event the defendant is involuntarily

6  terminated from employment or evicted from a residence, the

7  defendant must notify the probation officer within 48 hours of

8  those facts.  I'm imposing this condition because the

9  probation officer needs to know the whereabouts of the

10 defendant.  It's necessary for community protection, officer

11 safety, and to assist with rehabilitation.

12         Next, the defendant shall not knowingly and

13 intentionally be in the presence of anyone who is illegally

14 selling, using, or distributing a controlled substance; and if

15 such activity commences when he is present, the defendant must

16 immediately leave the location.  The defendant has a history

17 of substance abuse, as detailed in the Presentence Report, and

18 frequenting places where illegal, mind-altering substances are

19 being sold, used, or distributed will increase the risk that

20 the defendant will purchase, use, or possess those substances,

21 and so that's the reason I'm giving that condition.

22         Next, the defendant shall not knowingly and

23 intentionally associate with any person engaged in criminal

24 activity.  I'm giving you this condition because the research

25 indicates that -- this sort of obvious fact, that association

1  additional discretionary conditions, whatever the appropriate

2  nomenclature is now:  The defendant shall register with local

3  law enforcement agencies and the state attorney general as

4  directed by the probation office.  Again, this is a

5  requirement under the Sex Offender Registration and

6  Notification Act.

7          Next, at the direction and discretion of the

8  probation office, the defendant shall participate in approved

9  psychological and behavioral testing, evaluation, and

10  assessment programs for the treatment and the monitoring of

11  sex offenders and, if warranted, approved -- sex offender

12  approved and individual counseling program.  I'm able to

13  impose this condition.  If the defendant is released, this

14  offense is a very serious sex offense involving a minor, and

15  the therapeutic needs of the defendant would be met by this

16  condition.  It would help reduce recidivism and protect the

17  public.

18          Finally, I'm going to order that the

19  defendant -- by agreement of the parties, the defendant pay

20  restitution as a condition of his supervision -- as a

21  condition of the sentence, pay restitution to the victim of

22  his offense identified as Jane Doe No. 1 in the amount that

23  has been stipulated to, of $250,000, as agreed to by the

24  parties in Docket Entry No. 73.

25          The parties have asked that I include the

1 following precise language in the final judgment, which I'll

2 state on the record here first: Pursuant to the joint motion

3 to include the restitution stipulation in judgment filed by

4 the parties on May 5, 2015, Docket Entry No. 72, the Court

5 hereby orders the defendant to immediately pay $250,000 in

6 victim restitution to the clerk of the court in this judicial

7 district. The clerk of the court is ordered in turn to

8 disburse upon receipt any funds received from the defendant to

9 victim, Jane Doe No. 1, in care of the Marsh Law Firm, PLLC,

10 Client Trust Account. Said payment should be made via

11 government check and mailed to following address, the Marsh

12 Law Firm, PLLC, attention Jane. The P.O. Box is 4668,

13 No. 65135, New York, New York 10163-4668. And the phone

14 number, to the extent that it's necessary, 212-372-3030.

15            Based on my review of the defendant's financial

16 condition, as detailed in the Presentence Report, I'm going to

17 waive the fine in this case because the defendant does not

18 have the ability to pay the fine and there is an exceedingly

19 large restitution order in this case that I believe to be

20 paramount, in any event. So the fine will be waived in this

21 case.

22            It is further ordered that the defendant shall

23 pay the United States a total special assessment of $900,

24 which shall be due immediately.

25            Now, the sentence that I've just given is within

1  well, and that he be given credit for time served to the

2  extent possible. I suppose a preference would be if Marion or

3  Elkton don't offer the ARDAP, that that would be a preference.

4  Is that right, Mr. Schlesinger?

5         MR. SCHLESINGER: The preference to go for the sex

6  offender program over ARDAP, yes.

7         THE COURT: Okay. So I'll detail all of that in the

8  judgment commitment, but I'll recommend Marion, Illinois, or

9  Elkton, Ohio, so the defendant can take advantage of the

10  Bureau of Prisons Sex Offender Treatment Program.

11             All right. Anything else, Mr. Schlesinger?

12         MR. SCHLESINGER: No, Your Honor.

13         THE COURT: All right. Good luck, Mr. Eckstrom.

14         THE DEFENDANT: Thank you, Your Honor. God bless.

15         THE COURT: Let me just note for the record,

16  Miss Akalaonu, thank you so much for your presentation and for

17  your efforts on behalf of the victim.

18         MS. AKALAONU: Thank you, Your Honor.

19      (The hearing concludes at 12:55 p.m.)

20                 --ooOoo--

21

22

23

24

25

25

**BEFORE THE HONORABLE PHILIP P. SIMON**

```
1                    C E R T I F I C A T E

2     I certify that the foregoing is a correct transcript of the

3     record of proceedings in the above-entitled matter.

4

5

6

7

8

9     PAMELA S. OW _____  June 15, 2015

10    PAMELA S. OWEN, CSR, RPR
      Contract Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```