No. 15-2108

In the

# United States Court of Appeals
## for the Seventh Circuit

---

UNITED STATES OF AMERICA,
                                Plaintiff-Appellee,

v.

DANIEL T. ECKSTROM,
                                Defendant-Appellant.

---

On Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:13-cr-84 — Hon. Philip P. Simon, *Chief Judge*.

---

**BRIEF AND SHORT APPENDIX FOR THE UNITED STATES**

---

DAVID CAPP
United States Attorney

NATHANIEL L. WHALEN
Assistant United States Attorney
United States Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
(219) 937-5500

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF ISSUES............................................................................1

STATEMENT OF THE CASE ....................................................................2

    I.    Nature of the Case .................................................................2

    II.    Offense Conduct ....................................................................3

        A.    Jane Doe 1 – His Daughter.............................................4

        B.    Jane Doe 2 – His Ex-Girlfriend's Daughter .................7

        C.    Jane Doe 3 - His Ex-Girlfriend's Daughter ..................8

    III.    Procedural History .................................................................9

        A.    Sentencing Materials .....................................................10

        B.    Sentencing Arguments..................................................11

        C.    Sentencing.....................................................................12

        D.    Amended Sentencing Transcript ..................................14

SUMMARY OF THE ARGUMENT .........................................................15

ARGUMENT ...............................................................................................17

I.    Eckstrom's Within-Guideline Range Sentence Was Not "Grossly Disproportionate" to His Crime ....................................................17

    A.    Eckstrom's Sentence is Proportional Based on Precedent of this Court and the Supreme Court .......................................19

i

B.    Eckstrom Received a Within-Guideline Sentence, Which is Suggestive of Proportionality.................................................22

C.    Eckstrom's Sentence is Proportionate Since He Was Sentenced to Serve Less Than 12 Hours for Every Image for Which He is Responsible........................................................24

D.    Eckstrom's Punishment is Consistent with Other Punishments Around the Country........................................25

II.   Eckstrom Waived his Procedural Attack on his Sentence, And It Lacks Merit Anyway Because the District Court Considered All of the § 3553(a) Factors and Did Not Abuse its Discretion in Giving a Within-Range Sentence................................................................27

A.    Eckstrom Waived his Procedural Argument........................28

B.    The Court Considered All of the § 3553(a) Factors and the Specifics of Eckstrom's Case..................................30

C.    Eckstrom Has Failed to Rebut the Presumption of Reasonableness of His Sentence...........................................39

CONCLUSION.................................................................41

RULE 32 CERTIFICATION................................................42

CERTIFICATE OF SERVICE.................................................43

APPENDIX…………………………………………………………44

# TABLE OF AUTHORITIES

## CASES

*Ewing v. California*, 538 U.S. 11 (2003) .................................... 17, 18, 20

*Graham v. Florida*, 560 U.S. 48 (2010)................................................17

*Harmelin v. Mich.,* 501 U.S. 957 (1991)...........................................18, 20

*Hong v. Sec. Dept. of Corr.*, 478 Fed. Appx. 648 (11th Cir. 2012) .........25

*Hutto v. Davis*, 454 U.S. 370 (1982)...................................................18, 22

*Lockyer v. Andrade*, 538 U.S. 63 (2003)............................................18, 20

*Norris v. Morgan*, 622 F.3d 1276 (9th Cir. 2010) .................................25

*Rummel v. Estelle*, 445 U.S. 263 (1980)............................................19, 20

*Solem v. Helm*, 463 U.S. 277 (1983).................................................17, 19

*United States v. Abebe*, 651 F.3d 653 (7th Cir. 2011).......................28, 34

*United States v. Barnes*, 660 F.3d 1000 (7th Cir. 2011)...................30, 33

*United States v. Beasley*, 688 F.3d 523 (8th Cir. 2012) ........................26

*United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) ........................26

*United States v. Bostic*, 491 Fed. Appx. 731 (7th Cir. 2012) .................26

*United States v. Burnett*, 773 F.3d 122 (3d Cir. 2014) ..........................22

*United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012) .........................20

*United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014)...........................25

*United States v. Courtright*, 574 Fed. Appx. 743 (7th Cir. 2014)...........15

*United States v. Cruz*, 787 F.3d 849 (7th Cir. 2015) .............................29

*United States v. Daddino*, 5 F.3d 262 (7th Cir. 1993) ...........................15

*United States v. Diekemper*, 604 F.3d 345 (7th Cir. 2010) ....................34

*United States v. Dowell*, 771 F.3d 162 (4th Cir. 2014) ...........................25

*United States v. Falgout*, 325 Fed. Appx. 775 (11th Cir. 2009).............25

*United States v. Garthus*, 652 F.3d 715 (7th Cir. 2011) .......................37

*United States v. Gary*, 613 F.3d 706 (7th Cir. 2010) ............................36

*United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007).......................37

*United States v. Gross*, 437 F.3d 691 (7th Cir. 2006) ........... 18, 20, 22, 25

*United States v. Harris*, 567 F.3d 846 (7th Cir. 2009)...........................28

*United States v. Horton*, 770 F.3d 582 (7th Cir. 2014) ............. 23, 28, 39

*United States v. Jines*, 597 Fed. Appx. 886 (7th Cir. 2015) ..................38

*United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006)....................26

*United States v. Jones*, 696 F.3d 695 (7th Cir. 2012) ...........................22

*United States v. Martinez*, 650 F.3d 667 (7th Cir. 2011).......................39

*United States v. Metzger*, 411 Fed. Appx. 1 (7th Cir. 2010) ..................26

*United States v. Modjewski*, 783 F.3d 645 (7th Cir. 2015) ....................29

*United States v. Nagel*, 559 F.3d 756 (7th Cir. 2009)............................17

*United States v. Nigg*, 667 F.3d 929 (7th Cir. 2012)........................18, 19

*United States v. Osborne*, 345 F.3d 281 (4th Cir. 2003) ........................15

*United States v. Paton*, 535 F.3d 829 (8th Cir. 2008)............................25

*United States v. Rivera*, 546 F.3d 245 (2d Cir. 2008) ...........................25

*United States v. Ruzzano*, 247 F.3d 688 (7th Cir. 2001) .......................30

*United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) ......................26

*United States v. Schuster*, 706 F.3d 800 (7th Cir. 2013) ........................27

*United States v. Thompson*, 523 F.3d 806 (7th Cir. 2008) ....................23

*United States v. Tyra*, 454 F.3d 686 (7th Cir. 2006)........................34, 35

*United States v. Warner,* --- F.3d ----, 2015 U.S. App. LEXIS 11938 (7th Cir. July 10, 2015) .............................................................................30

## OTHER AUTHORITIES

18 U.S.C. § 3553(a) ......................................................... *passim*

U.S. Const. Amend. VIII ........................................................17

U.S.S.G. § 2G2.2 ................................................................24

U.S.S.G. § 5G1.2 ................................................................23

U.S.S.G. Chapter 5 .............................................................22

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

No. 15-2108

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DANIEL T. ECKSTROM,
Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Northern District of Indiana

_____

BRIEF FOR THE UNITED STATES

_____


## JURISDICTIONAL STATEMENT

The jurisdictional statement of the appellant is complete and correct.


## STATEMENT OF ISSUES

1. Defendant Daniel Eckstrom began sexually abusing his biological daughter when she was eight years old. The abuse lasted over four years. He produced over 2,800 depictions of the abuse and

1

transmitted many via the Internet. He abused and exploited two other pre-pubescent victims in his care and transmitted some of those recordings. He also possessed over 80,000 other depictions of children being caused to engage in sexually explicit conduct. Was his within-Guideline 240-year sentence "grossly disproportionate" to his crimes in violation of the Eighth Amendment?

2. Eckstrom's counsel twice confirmed at sentencing that the district court had addressed all of his principal arguments in mitigation. Did Eckstrom thereby waive his argument that the sentencing was procedurally flawed? If not waived, did the district court err in citing the § 3553(a) factors it considered, addressing the characteristics of Eckstrom's crimes, and then giving Eckstrom a within-Guideline sentence?

## STATEMENT OF THE CASE

### I.    Nature of the Case

Defendant Daniel Eckstrom pled guilty without an agreement to seven counts of producing child pornography, one count of distributing

child pornography, and one count of possessing child pornography.[1] COP 45-46. He was sentenced to the statutory maximum on each count: 30 years on each production count, 20 years on the distribution count, and 10 years on the possession count, all to be served consecutively, resulting in a 240-year term of imprisonment. S.A. 2-3; Def. App. 2. Eckstrom appeals that sentence.

## II.    Offense Conduct

Eckstrom, who was 32 years old at the time of sentencing, admitted to most of the facts included in the government's proffer of the evidence during his change of plea hearing. COP 17-38 (government's proffer), 41-46 (admission of facts). That proffer was incorporated into his Presentence Report ("PSR"), which the court adopted. Sent. 39; R. 70 at 4-15 (PSR). Accordingly, the below facts are undisputed unless otherwise noted.

---

[1] Citations to the district court record are designated as "R." followed by the PDF page number. For example, "R. 1 at 7" refers to district court docket entry 1, specifically the 7th page in the PDF file. Citations to the November 17, 2014 Change of Plea Hearing (R. 64) are designated as "COP" followed by the PDF page number. Citations to the May 12, 2015 sentencing (R. 92) are designated "Sent." followed by the PDF page number. Note that the page numbers on the transcript are one less than the PDF page number. Citations to the government's short appendix are designed as "S.A." Eckstrom's brief is designated "Def. Br." and citations to his appendix are designed as "Def. App."

## A. Jane Doe 1 – His Daughter

Eckstrom assumed custody of his biological daughter,[2] Jane Doe 1, in December 2008. Sent. 70-71. "When I first moved into my father's house," she later wrote, "… I thought it was going to be good for me." R. 70-3 at 2. Instead, he immediately began to sexually abuse and exploit his then-eight-year-old daughter. R. 12 at 1; COP 28-29; R. 70-3 at 2.

Over the next four-plus years, Eckstrom created at least 2,606 pornographic images and 274 videos of himself sexually abusing and exploiting his daughter. *See* R. 12 at 1-8 (Counts 1-5); COP 28-33 (facts underlying counts); R. 70 at 8-11. They include depictions of Jane Doe 1:

- Being vaginally penetrated by Eckstrom with his penis, fingers, and sex toys;

- Being anally penetrated by Eckstrom with his penis, fingers, and sex toys;

- Being caused to perform oral sex on, and receive oral sex from, Eckstrom;

- Being vaginally penetrated as an eight-year old with a Crayon;

- Being vaginally penetrated as a nine-year-old with a marker;

- Being ejaculated on with semen by Eckstrom;

---

[2] It is generally the policy of the United States Attorney's Office not to disclose in public filings a familial relationship, if any, between a defendant and his victim(s). In this instance, because Jane Doe 1 has legally changed her first and last names, government counsel sought and obtained advance permission to publicly identify the relationship

- Being caused to engage in actual or simulated masturbation of herself and Eckstrom;

- Being caused to expose her vaginal area in a lascivious manner;

- Crying and asking for the abuse to stop;

- Wrestling with Eckstrom and trying to squirm away from him while he has sex with her;

- Being caused to expose her vaginal area while holding signs with the names of men (to whom it is believed Eckstrom was distributing his child pornography).

COP 28-33; Sent. 21 (court's description of videos); *see also* R. 70 at 8-11 (PSR categorization of images and videos). The setting for most of the videos and images was Eckstrom's basement. R. 77-2 at 7.

Among other things, Eckstrom used his "pretty strong" homemade marijuana to "lure" Jane Doe 1 to engage in sexual conduct with him. R. 1 at 11-12. The child appears drugged in some of the depictions, beginning when she was eight years old. COP 29. Eckstrom denied giving Jane Doe 1 marijuana before she turned 12 years old. COP 42.

Jane Doe 1 described other "gifts" her father offered her "to get [her] to do what he said," including "candy, chocolate and other things." R. 70-3 at 3. If she did not comply, he would beat her with a fist "in spots that would be covered by [her] clothes, and if [she] struggled he'd

hit [her] harder." R. 70-3 at 4; *see also* R. 70-4 at 3; Sent. 33. Eckstrom denied hitting Jane Doe 1. COP 42.

Eckstrom also gave Jane Doe 1 a sexually transmitted disease. R. 70-4 at 2-3; COP 26.

While he was filming, Eckstrom would make Jane Doe 1 "smile at the camera and [he would say] things like, 'be good for the audience.'" R. 70-3 at 8. As a result of Eckstrom trading the material online, by the time of sentencing, the National Center for Missing and Exploited Children had identified 10,528 depictions of Jane Doe 1 found in 77 investigations in 29 different states. Sent. 44, 71.

Eckstrom also possessed more than 80,000 images and 600 videos depicting the abuse and exploitation of other children. COP 28. The depictions include children being forced to endure bondage, torture and bestiality, and feature children who appear to be as young as two years old. COP 28, 37-38; R. 70 at 13-14.

Eckstrom's online trading of homemade child pornography resulted in his arrest after authorities in Utah discovered an individual who possessed images of Jane Doe 1, and the images were traced back to Eckstrom. R. 1 at 4-7 (probable cause affidavit); COP 17-21. Police

searched Eckstrom's residence on May 23, 2013 and discovered, among other things, marijuana and child pornography saved to his computer. R. 1 at 8-9. He waived his *Miranda* rights and gave a full confession. R. 1 at 9-12. He said that he would "'be into' child pornography for a couple of weeks, then erase everything because he felt 'like a scumbag,'" but then he would view more material again later. R. 1 at 10. He said he did not know "how to stop looking at" child pornography. R. 1 at 10.

During his interview, Eckstrom was asked to describe his relationship with Jane Doe 1, his pre-teen daughter. R. 1 at 11. He described it as "a boyfriend/girlfriend relationship." R. 1 at 11.

## B. Jane Doe 2 – His Ex-Girlfriend's Daughter

Eckstrom originally denied sexually abusing or photographing anyone else, but ultimately identified two other minor female victims. R. 1 at 11. One was Jane Doe 2, the daughter of one of Eckstrom's ex-girlfriends. COP 21.

Eckstrom took at least 77 pornographic images and one video of Jane Doe 2 on at least four separate occasions in 2012. COP 33; R. 12 at 9 (Count 6). She was between six and seven years old. COP 33. The images and videos show Jane Doe 2:

- Receiving oral sex from Eckstrom;

- Being caused to hold Eckstrom's penis in her hand, or put it in her mouth;

- Being caused to expose her genitalia or pose in a lascivious manner;

- Having a vibrator inserted into her vagina;

- Being caused to engage in masturbation or to simulate masturbation.

COP 33. Eckstrom distributed images of Jane Doe 2 online, and as of sentencing, at least 493 were found in six different states. R. 78 at 5.

Jane Doe 2 said Eckstrom touched her on the vagina several times when she was between five and six years old. COP 26. She described an incident in which Eckstrom woke her by inserting a blue vibrating device into her underwear and another in which he grabbed her from behind and rubbed his hands on, and then in, her vagina. COP 26-27. Each time, Eckstrom told Jane Doe 2 not to tell her mother. COP 27.

## C. Jane Doe 3 - His Ex-Girlfriend's Daughter

Jane Doe 3 is Jane Doe 2's older sister. R. 57 (Exhibit A at 6); R. 78 at 4. She was between nine and ten years old in 2012 when Eckstrom produced four pornographic images and three pornographic videos of her. R. 12 at 10; COP 33-34. In those, Jane Doe 3 can be seen:

- In the bath, with a video camera mounted across from her, at various points spreading her legs and touching her genitals;

- Asleep, with Eckstrom's exposed penis in the shot;

- Spread out asleep on her bed, with her tank top lifted up to expose her bare chest and one of the legs of her shorts pulled open to reveal the area where her underwear covers her vagina;

- In the bath, with a camera mounted on or near the shower rod and zoomed in on her spread legs. A song was added to the video with the following lyrics playing as the child slides back and forth in the bathtub: "Need you. Dream you. Find you. Taste you. Fuck you. Use you. Scar you. Break you."

COP 33-35. Jane Doe 3 told authorities Eckstrom touched her vagina over her clothes multiple times during this period. COP 27. Eckstrom told her if she told her mother, he would hurt one of them. COP 27.

## III.   Procedural History

Eckstrom was indicted on seven counts of producing child pornography—one count for each of the five years he produced materials of Jane Doe 1 and one count each for the materials relating to Jane Doe 2 and Jane Doe 3—one count of distributing child pornography, and one count for possession of child pornography. R. 12.

He pled guilty to all nine counts. COP 46. During the first change of plea hearing, the court accepted the plea as to all the other counts but ordered briefing on the Jane Doe 3 count to ensure the factual basis

9

was sufficient. R. 32 at 38-39. The government supplemented the factual basis for that count, R. 33 at 6-7, and the court later accepted Eckstrom's plea on all the counts. COP 46.

## A. Sentencing Materials

The court began the sentencing hearing by listing all the materials it had reviewed, including victim impact statements from Jane Doe 1 (R. 70-2 and 70-3), selected portions of the pornography, (Sentencing Exhibits 1 and 2), and materials Eckstrom submitted. Sent. 5, 9-10.

In one statement, Jane Doe 1 described how she has "a lot of anger" because of the abuse, "didn't used to be like this," and feels "hopeless, like nothing is going to get better." R. 70-2 at 1. She speculated the images of her "are probably everywhere by now," and their dissemination makes it more likely she will "run into someone and get raped and stuff because someone recognizes [her]." *Id.* In another statement, Jane Doe 1 described how she had to lie to everyone for over four years about the abuse, how she thought about killing herself, and how Eckstrom told her "things like 'It's normal' and 'people used to do it all the time.'" R. 70-3 at 1-3.

Eckstrom submitted certificates and letters related to his religious practices, as well as character letters. R. 75-1 at 5-16; R. 75-2 at 1-22. He also wrote a letter in which he stated, among other things, "I had full custody for many years and raised a loving, smart, respectful honor student as a single parent. I know the nature of my crime makes me seem heartless, I just want you to know I love my daughter very much." R. 75-1 at 2. He called his decisions "stupid" and said they did not "gel in the way of being a caring father," but "I did try to make my daughter have a happy childhood, in spite of the mistakes I made." R. 75-1 at 2.

## B. Sentencing Arguments

Eckstrom objected to various enhancements in the PSR, all of which were overruled and none of which are the subject of this appeal. R. 57; Sent. 16-31. The court adopted the PSR and the factual allegations contained therein. Sent. 39.

Defense counsel argued for a 30-year sentence based on mitigating factors, such as how there "were not more victims," that Eckstrom did not benefit financially from his crimes, Eckstrom's cooperation with law enforcement, his guilty plea and how that kept the victims from testifying (though they would not have had to in this type of case), his

remorse, and his belief that recidivism rates reduce with age. Sent. 56-61; R. 57. Eckstrom gave a brief statement on his own behalf, Sent. 61-62, and the government made a final argument advocating for the "longest sentence allowed by law." Sent. 62-67; R. 78 at 24 (sentencing memo asking for lifetime equivalent jail term).

## C. Sentencing

The court calculated Eckstrom's offense level at 58, reduced that by three points for acceptance of responsibility, and then reduced that to the highest level available in the Guidelines, 43. Sent. 49-40; R. 70 at 22. With a criminal offense history of I, the Guidelines called for life imprisonment. Sent. 40. The court noted that the production counts had a 30-year maximum, the distribution count had a 20-year maximum, and the possession count had a 10-year maximum. Sent. 40.

The judge then began his pronouncement. Def. App. 7. He called this "the single-most disturbing case that I've had in 12 or 13 years as a judge" with "among the most distressing and troubling" victim impact statements he had ever received. Def. App. 9-10. The judge commented on the "anguish" in the videos, the wide distribution of images relating

to Jane Doe 1, and how the "breadth of the crime is truly astonishing." Def. App. 11.

The court noted how there were three victims, how Eckstrom "plied his daughter with marijuana," and how Eckstrom described his relationship with his daughter as "boyfriend/girlfriend." Def. App. 11-12. The court recounted the "boatload of other" child pornography that Eckstrom possessed, how he effectively scared Jane Doe 1 so she would not report his abuse, and how he was only apprehended through a circuitous way. Def. App. 12-13. While admitting "it's true that the defendant cooperated with the authorities" the court said, "speaking pragmatically, what choice did he have? There was an abundance of videotapes that showed him doing the very conduct that he was being accused of." Def. App. 13.

Finding Eckstrom "stole his daughter's childhood," the court noted "this case calls out for a stiff punishment. And the guidelines, themselves, deliver that, and I agree with them in this case." Def. App. 13-14. The judge noted that he occasionally disagreed with the Guideline sentences, but not in this case. Def. App. 15. The court considered Eckstrom's submissions and "commend[ed] the defendant for

his efforts while he's been incarcerated." Def. App. 14. "But," the court continued, "they do not … outweigh the nature of this case, which is the most serious that one could conceivably imagine." Def. App. 14.

The court asked if it had "addressed all of [defense counsel's] principal arguments in mitigation," and defense counsel said, "Yes, sir." S.A. 2. The judge sentenced Eckstrom to the maximum on each count to run consecutively, resulting in a 240-year sentence, and a lifetime term of supervised release. Def. App. 2; S.A. 2-3. Eckstrom was ordered to pay Jane Doe 1 $250,000 in restitution, as agreed to by the parties. Def. App. 21-22. Both parties said they did not "have any objections not previously addressed" and did not "need any further elaboration on the sentence." Sent. 83.

## D. Amended Sentencing Transcript

Eckstrom noted in his opening brief that the court's oral pronouncement, as reflected in the sentencing transcript, of a "2,280 month" sentence did not match up to the written judgment of 2,880 months. Def. Br. 3 n.1; Def. App. 2, 17. As Eckstrom noted, 2,880 months is the total of all the statutory maximums added together to run consecutively. Def. Br. 3 n.1. Eckstrom conceded the oral

pronouncement appeared to be a misstatement and did not assert a sentencing error had been made. Def. Br. 3 n.1. In response, the government asked the court reporter to listen to that portion of the proceedings again and, upon doing so, she confirmed the transcript contained a typographical error and that the judge had said "2,880 months." R. 90. The district court granted the government's unopposed motion, filed pursuant to Federal Rule of Appellate Procedure 10(e), to correct and modify the record with the amended transcript. R. 91; 92; S.A. 1-4.[3]

## SUMMARY OF THE ARGUMENT

Eckstrom has not shown his is one of the "exceedingly rare" instances in which a sentence is "grossly disproportionate" to the crimes committed and therefore violates the Eighth Amendment. His crimes are much more serious than those the Supreme Court has held may be

---

[3] The judge appears to have misspoke when he said the sentence for Count 9 was "180 months," as he had previously acknowledged the statutory maximum for that count was 10 years, or 120 months. S.A. 2; Sent. 40. The orally pronounced total of 2,880 months (S.A. 3) and written judgment (Def. App. 2) resolve any ambiguity since they reflect the statutory maximums added together to run consecutively (360+360+360+360+360+360+360+240+120=2,880). *United States v. Daddino*, 5 F.3d 262, 266 (7th Cir. 1993) (per curiam) (affirming written order as "correctly reflect[ing] Daddino's sentence"); *United States v. Osborne*, 345 F.3d 281, 283 n.1 (4th Cir. 2003) (affirming written judgment when it reflected "district judge's explicitly stated intent"); *United States v. Courtright*, 574 Fed. Appx. 743 (7th Cir. 2014) (unpublished) (finding written order clarified ambiguous oral pronouncement).

proportionally punished by life in prison, and are at least as, if not more serious than crimes this Court has held are punishable by life imprisonment. His within-Guideline sentence is the result of his sexually abusing and exploiting three girls under the age of 12 entrusted to his care, including his biological daughter, in a disturbing number of ways and for an extended period of time. He distributed numerous depictions he produced, which are now spread all over the country, and possessed over 80,000 depictions of other children being abused and exploited.

Eckstrom's counsel twice told the court at sentencing that it had considered all of his principal arguments in mitigation, and so any argument to the contrary is waived. On the merits, the court committed no procedural error in sentencing since it correctly calculated the Guideline range, addressed all of Eckstrom's principal arguments in mitigation, and explained how its sentence was based on the facts of the case and the § 3553(a) factors. Eckstrom has not rebutted the presumption that his within-range sentence is reasonable.

## ARGUMENT

### I.  Eckstrom's Within-Guideline Range Sentence Was Not "Grossly Disproportionate" to His Crime

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. It contains a "'narrow proportionality principle that applies to noncapital cases'" and prohibits sentences that are "grossly disproportionate to the crime committed." *United States v. Nagel*, 559 F.3d 756, 762-63 (7th Cir. 2009) (quoting *Ewing v. California*, 538 U.S. 11, 20 (2003)).

Eckstrom argues his sentence is unconstitutional as applied to him, rather than being facially unreasonable. Def. Br. 4. This Court therefore considers three factors to determine whether his sentence violates the Eighth Amendment: "'(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.'" *Id.* (quoting *Solem v. Helm*, 463 U.S. 277, 292 (1983)); *see also Graham v. Florida*, 560 U.S. 48, 60 (2010) (stating three-part test). The Court need not consider prongs (ii) or (iii) unless Eckstrom can show his is "'the rare case in which a

17

threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" *United States v. Gross*, 437 F.3d 691, 692-93 (7th Cir. 2006) (quoting *Ewing*, 538 U.S. at 20); *see also United States v. Nigg*, 667 F.3d 929, 938 (7th Cir. 2012) ("A quick review of the case law strongly reinforces that the first factor generally presents an insurmountable bar.").

Successful proportionality challenges to noncapital sentences are "exceedingly rare." *Gross*, 437 F.3d at 693 (quoting *Ewing*, 538 U.S. at 22). As this Court noted, "precedent in this area reflects how high the bar is set." *Gross*, 437 F.3d at 693. The Supreme Court has overwhelmingly upheld sentences against Eighth Amendment challenges. *See Lockyer v. Andrade*, 538 U.S. 63, 66, 77 (2003) (affirming two consecutive terms of 25 years to life for petty theft of about $150 worth of merchandise under three strikes law); *Ewing*, 538 U.S. at 28-31 (affirming 25 year to life sentence for felony grand theft of three golf clubs under three strikes law); *Harmelin v. Mich.*, 501 U.S. 957, 961, 996 (1991) (affirming life in prison without the possibility of parole for first-time offender possessing 672 grams of cocaine); *Hutto v. Davis*, 454 U.S. 370, 370-71 (1982) (per curiam) (affirming two

consecutive terms of 20 years in prison for possession with intent to distribute and distribution of nine ounces of marijuana); *Rummel v. Estelle*, 445 U.S. 263, 265-66, 285 (1980) (affirming life sentence under three strikes law where triggering offense was obtaining $ 120.75 by false pretenses and loss amount of the two previous frauds was $ 80 and $ 28.36, respectively).

The Supreme Court has only found one as-applied, non-capital sentence to be unconstitutional under the Eighth Amendment, and that involved "one of the most passive felonies a person could commit." *Solem*, 463 U.S. at 296-97, 303 (reversing life without the possibility of parole where defendant previously committed six "minor" and "nonviolent" felonies and his triggering offense was uttering a "no account" check for $ 100).

This Court reviews the denial of Eckstrom's Eighth Amendment challenge *de novo*. *Nigg*, 667 F.3d at 934.

## A. Eckstrom's Sentence is Proportional Based on Precedent of this Court and the Supreme Court

Eckstrom has failed to raise an inference that the crime he committed and his 240-year sentence are grossly disproportionate to one another, and so this Court need not move past the first prong of the

19

Eighth Amendment analysis. *Gross*, 437 F.3d at 692-93. Eckstrom's 240-year sentence is essentially a life sentence, and his crimes are more serious than those the Supreme Court has held can be punished by life imprisonment. *See Andrade*, 538 U.S. at 77; *Ewing*, 538 U.S. at 28-31; *Harmelin*, 501 U.S. at 996; *Rummel*, 445 U.S. at 285. In light of that Supreme Court precedent, Eckstrom's life sentence of 240 years is proportional to his much more serious crimes.

Though this Court has not squarely addressed a crime like Eckstrom's, it has already found that the distribution of child pornography is "quite serious" and "at least as serious as those held by the Supreme Court to permissibly trigger sentences of up to life in prison." *Gross*, 437 F.3d at 693-94 (citing *Ewing* and *Rummel*). In other words, if the Supreme Court has already determined those less serious crimes can be punished by life imprisonment, a more serious crime like the distribution of pornography can certainly be punished by life imprisonment without violating the Eighth Amendment. *Id.*; *see also United States v. Cephus*, 684 F.3d 703, 705, 709 (7th Cir. 2012) (affirming life sentences because conspiracy to entice underage girls to engage in prostitution, using force and fraud to coerce adult women to

engage in prostitution, and related offenses are "more serious" than crimes for which Supreme Court has affirmed life sentences).

But Eckstrom did not merely produce child pornography. Over the course of four-plus years, Eckstrom created over 2,800 child pornography depictions involving his pre-pubescent biological daughter. COP 29-33. Four years was one-third of her life at that point. He created those depictions using drugs, force, and "gifts," leaving behind a young victim who has already contemplated suicide and who now fears the outside world. R. 1 at 11; R. 70-2 at 1; R. 70-3 at 1-3. He also abused his position of authority over two other females under the age of 11 by sexually abusing and exploiting them. COP 33-36. He distributed numerous videos reflecting this exploitation and abuse, resulting in over 10,000 depictions of Jane Doe 1 and nearly 500 images of Jane Doe 2 discovered all across the country by the time of sentencing. R. 78 at 5; Sent. 44, 71. He also collected and traded over 80,000 other depictions of child pornography, including some showing sadomasochistic conduct and other depictions of violence. COP 28. If the production of child pornography is "at least as serious" as those crimes that have merited a life sentence, certainly the production by force, distribution and

possession of child pornography featuring three different prepubescent victims can be punished by life imprisonment consistent with the Eighth Amendment. *Gross*, 437 F.3d at 693-94.

## B. Eckstrom Received a Within-Guideline Sentence, Which is Suggestive of Proportionality

Furthermore, Eckstrom's sentence was within his applicable Guideline range, and "[i]f the sentence is within the statutory limits, a claim of cruel and unusual punishment is normally without merit." *United States v. Jones*, 696 F.3d 695, 699 (7th Cir. 2012); *see also United States v. Burnett,* 773 F.3d 122, 138 (3d Cir. 2014) (noting Guidelines range sentence "is in and of itself strongly suggestive of proportionality"). That is, in part, because "federal courts should be reluctant to review legislatively mandated terms of imprisonment." *Hutto*, 454 U.S. at 374 (quotation and brackets omitted).

Eckstrom's offense level, 58, was reduced to the highest permissible under the Guidelines, 43. U.S.S.G. Chap. 5 Pt. A, Application Note 2. An offense level of 43 calls for a life sentence no matter the defendant's criminal history. U.S.S.G. Chap. 5 Pt. A. So his sentencing range was life. When there are multiple counts of conviction (as is the case here) and the highest applicable statutory maximum is

less than the Guideline range (in this case, 30 years is less than life imprisonment), "the guidelines instruct the sentencing court to impose maximum and consecutive sentences to achieve what the guidelines sentence would have been but for the statutory maximum." *United States v. Horton*, 770 F.3d 582, 584 (7th Cir. 2014) (per curiam) (citing U.S.S.G. § 5G1.2(d)). In other words, the court should sentence the defendant to the statutory maximum under as many counts of conviction as necessary, all to run consecutively, until that sentence reaches the applicable Guideline range. *Id.*

Since the Guideline range here was life, the court properly sentenced Eckstrom to the statutory maximum under each count of conviction to run consecutively to achieve a life sentence. *Id.*; *see also United States v. Thompson*, 523 F.3d 806, 814 (7th Cir. 2008) (noting when Guidelines range was life imprisonment, 190-year sentence was within range). That means the 240-year sentence is consistent with Guideline principles, presumptively reasonable, and thus there is no gross disproportionality here. *See, e.g.*, *Horton*, 770 F.3d at 585 (noting "any prison sentence in effect would be presumptively reasonable" when Guideline range is life).

23

### C. Eckstrom's Sentence is Proportionate Since He Was Sentenced to Serve Less Than 12 Hours for Every Image for Which He is Responsible

Eckstrom's main argument appears to be that his sentence is so long that it must be grossly disproportionate. While the 240-year sentence is equivalent to a life sentence and may seem harsh at first glance, the sentence pales in comparison to the crimes Eckstrom committed. If the Court thinks about the punishment in terms of each type of crime separately, Eckstrom has been sentenced to serve just over two days for every child pornography image he created;[4] eight days for every image he was known to have distributed at the time of sentencing;[5] and 17 hours for every image he possessed (but did not make).[6] Add those together and Eckstrom has been sentenced to serve

---

[4] Adopting the Guideline instruction that each child pornography video counts as 75 images, *see* U.S.S.G. § 2G2.2, Application Note 4(B)(ii), Eckstrom produced the equivalent of 41,610 known depictions. ((75 images per video x 472 known videos) + 6,210 images). R. 70 at 8. That results in a sentence of just over two days per image. (87,600 days / 41,610 depictions).

[5] 87,600 days / (10,528 [images of Jane Doe 1 found in other investigations] + 493 [Jane Doe 2]). Sent. 44; R. 78 at 5.

[6] (87,600 days / (80,000 images + 45,000 images [600 videos x 75 images per video])) x 24 hours. R. 70 at 31.

24

less than 12 hours of jail time for every pornographic image of a child for which he is known to be responsible.[7]

## D. Eckstrom's Punishment is Consistent with Other Punishments Around the Country

Since Eckstrom has failed to raise an inference that his sentence was grossly disproportionate, this Court need not consider prongs (ii) and (iii) of the Eighth Amendment analysis. *Gross*, 437 F.3d at 692-93. However, even if this Court does consider the other two prongs, courts around the country have consistently upheld similar sentences for similar crimes in spite of Eighth Amendment challenges. *See United States v. Dowell*, 771 F.3d 162, 167-69 (4th Cir. 2014) (960-month sentence for production of child pornography); *United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014) (120-year sentence for production, possession, and transportation of child pornography); *Hong v. Sec. Dept. of Corr.*, 478 Fed. Appx. 648, 651-52 (11th Cir. 2012) (unpublished) (per curiam) (life plus 415-year sentence for possessing child pornography); *Norris v. Morgan,* 622 F.3d 1276, 1296 (9th Cir. 2010) (life without parole for violation of "two strikes" sex offender law); *United States v.*

---

[7] (87,600 days / (41,610 depictions produced + 11,021 images distributed + 125,000 images possessed)) x 24 hours.

*Falgout*, 325 Fed. Appx. 775, 778-79 (11th Cir. 2009) (unpublished) (960-year sentence for production of child pornography); *United States v. Rivera*, 546 F.3d 245, 254-55 (2d Cir. 2008) (life sentence for sexual exploitation of a minor); *United States v. Paton*, 535 F.3d 829, 837-38 (8th Cir. 2008) (life sentence for production of child pornography); *United States v. Johnson*, 451 F.3d 1239, 1243-44 (11th Cir. 2006) (140-year sentence for production, distribution, and possession of child pornography).

Moreover, this Court and other courts have upheld similar sentences for similar crimes as substantively reasonable. *See, e.g., United States v. Bostic*, 491 Fed. Appx. 731, 732 (7th Cir. 2012) (unpublished) (315-year sentence for 65 counts involving child pornography); *United States v. Metzger*, 411 Fed. Appx. 1 (7th Cir. 2010) (unpublished) (235-year sentence for 15 counts of producing child pornography); *see also United States v. Beasley*, 688 F.3d 523, 535-36 (8th Cir. 2012) (290-year sentence for production and attempted production of child pornography); *United States v. Sarras,* 575 F.3d 1191, 1219-21 (11th Cir. 2009) (100-year sentence for production and possession of child pornography); *United States v. Betcher,* 534 F.3d

820, 826-28 (8th Cir. 2008) (750-year sentence for production, receipt, and possession of child pornography).

Eckstrom has not pointed to any court that has reversed a sentence in a child pornography or abuse case as grossly disproportionate under the Eighth Amendment. His sentence should be affirmed.

## II. Eckstrom Waived his Procedural Attack on his Sentence, And It Lacks Merit Anyway Because the District Court Considered All of the § 3553(a) Factors and Did Not Abuse its Discretion in Giving a Within-Range Sentence

Eckstrom argues that the district court did not consider his lack of criminal history, efforts at rehabilitation, or acceptance of responsibility when reaching his sentence. Def. Br. 4-6. He also asserts the court erred in weighing the § 3553(a) factors. Def. Br. 4-6. Though he mostly couches these arguments in terms of an Eighth Amendment challenge, to the extent Eckstrom is making an argument that the court made procedural errors at sentencing or that his sentence is substantively unreasonable, those arguments also fail.

This Court reviews claims of procedural error at sentencing *de novo* and a challenge to the sentence's substantive reasonableness for abuse of discretion. *United States v. Schuster*, 706 F.3d 800, 808-09 (7th

27

Cir. 2013). Procedurally, the court should "(1) calculate the applicable Guidelines range; (2) give the defendant an opportunity to identify any of the 18 U.S.C. § 3553(a) factors that might warrant a non-Guidelines sentence; and (3) state which factors influenced the final sentence." *United States v. Abebe*, 651 F.3d 653, 656 (7th Cir. 2011). The court should not give a "rote statement that the judge considered all relevant factors," but "[l]ess explanation is typically needed when a district court sentences within an advisory guidelines range." *United States v. Harris*, 567 F.3d 846, 854 (7th Cir. 2009). Substantively, a sentence within the properly calculated Guideline range is presumptively reasonable and the burden falls on the defendant to rebut that presumption. *Horton*, 770 F.3d at 585.

## A. Eckstrom Waived his Procedural Argument

Eckstrom does not challenge the district court's calculation of the Guideline range, or claim that he was denied an opportunity to identify any mitigating § 3553(a) factors. Therefore, his only challenge is to the application and consideration of the § 3553(a) factors.

He asserts his "sentence is so severe that the trial court could not have properly considered his history or characteristics," Def. Br. 4,

28

specifically his lack of criminal history and efforts at rehabilitation, Def. Br. 5, or how the sentence would promote respect for the law or deter criminal activity. Def. Br. 6. However, his arguments that the court procedurally erred "by failing to consider the nature and circumstances of his offense," are not only belied by the record, but are waived. *See United States v. Cruz*, 787 F.3d 849, 850 (7th Cir. 2015) (per curiam).

Eckstrom's counsel admitted at sentencing that the court had "addressed all of [Eckstrom's] principal arguments in mitigation." S.A. 2. Counsel confirmed that all objections had been "previously addressed" and he did not "need any further elaboration on the sentence." Sent. 83. By so confirming, he has waived any argument that the court failed to consider specific § 3553(a) factors. *See Cruz*, 787 F.3d at 850 (finding waiver when court "asked if he had addressed all of the arguments, and Cruz's lawyer answered yes"); *United States v. Modjewski*, 783 F.3d 645, 654-55 (7th Cir. 2015) (per curiam) (finding waiver where court asked "if you feel that there was something that I needed to address specifically" and counsel said no). Eckstrom's argument that the court did not consider his main arguments in mitigation is waived.

Since Eckstrom has waived that argument, he is left asserting that the court "committed an error of judgment when weighing appropriate factors." Def. Br. 5. But, there is no error "where, as here, the defendant merely disagrees with the weight that the district judge assigned to various mitigating factors." *United States v. Barnes*, 660 F.3d 1000, 1010 (7th Cir. 2011) (quoting *United States v. Ruzzano*, 247 F.3d 688, 699 (7th Cir. 2001)); *see also United States v. Warner*, --- F.3d ----, 2015 U.S. App. LEXIS 11938, at *18 (7th Cir. July 10, 2015) ("In general, a disagreement about how much weight to give each § 3553(a) factor does not warrant reversal"). Eckstrom's arguments are a non-starter and fail for that reason.

## B. The Court Considered All of the § 3553(a) Factors and the Specifics of Eckstrom's Case

Even if the Court reaches the merits of Eckstrom's argument, the district court properly considered the § 3553(a) factors and explained the reasons for its sentence.

### 1. The Court Considered, and Eckstrom Received Credit for, His Acceptance of Responsibility and His Remorse

Despite Eckstrom's arguments that he received "no credit whatsoever for his acceptance of responsibility" or his remorse, Def. Br.

7, the court twice acknowledged his cooperation with authorities. Def. App. 13, 14. But the court also noted, "speaking pragmatically, what choice did he have? There was an abundance of videotapes that showed him doing the very conduct that he was being accused of." Def. App. 13. It acknowledged that Eckstrom "has expressed remorse in this case and cooperated with the government," but again believed that was "tempered by the fact that he really had very little choice given the weight of the evidence against him." Def. App. 14.

Eckstrom also received a reduction of three levels from his criminal offense level for acceptance of responsibility. Sent. 39; R. 70 at 22. He argues that he did not really receive "credit" for this acceptance because it had no practical effect on his offense level. Def. Br. 7. The three-level reduction dropped his offense level from 58 to 55, but that was still above the Guidelines max score of 43. R. 70 at 22. Eckstrom is correct that the three-level reduction did not change his overall offense level, but that lack of practical effect is Eckstrom's own doing. He is the one who committed the acts that resulted in base offense levels of 32, plus 16 points' worth of specific offense characteristic increases, plus five points in multiple count adjustments, and finally a five-point

enhancement for his "pattern of activity involving prohibited sexual conduct," all resulting in an adjusted offense level of 58. R. 70 at 15-22. Eckstrom's own acts caused his offense level to be so high that anything short of a 16-point reduction would have no practical effect.

## 2. The Court Reviewed the Provided Materials and Considered Eckstrom's Purported Rehabilitation

Eckstrom next argues the court did not acknowledge his efforts at rehabilitation. Def. Br. 7. However, the court said it read the materials showing his attempts at rehabilitation and explicitly "commend[ed] the defendant for his efforts while he's been incarcerated." Def. App. 14; *see also* Def. App. 8; Sent. 11. The court continued, however, that the rehabilitation materials "do not, in my judgment, outweigh the nature of this case, which is the most serious that one could conceivably imagine." Def. App. 14. Again, the court considered the argument in mitigation, but just did not find it compelling in light of Eckstrom's four-plus years of sexual abuse and exploitation of three prepubescent girls in his custody or care, and thousands of other children depicted in the child abuse images and videos he collected.

### 3. The Court Acknowledged Eckstrom's Criminal History, Both Previously and the Four-Plus Years of Abuse Here

Next, Eckstrom contends that the court did not consider his criminal history, but it clearly did when noting he had a category I criminal history. Sent. 39; *cf. Barnes*, 660 F.3d at 1010 (noting court "incorporated his criminal history into his base Guideline range"). Eckstrom's argument is essentially that he should have received a lighter sentence because he had not been previously convicted of a crime. But, that ignores the fact that he committed crimes on a "nearly day-in, day-out" basis for four-plus years before finally being caught. Def. App. 15. The court did not ignore that fact. It discussed how Eckstrom was granted custody of his daughter in 2008 and he "almost immediately" began sexually abusing her and did so for the next four-plus years while videotaping and hurting her. Def. App. 10-11. The court noted how Eckstrom used fear and intimidation to keep Jane Doe 1 from reporting the abuse, and how the "plan worked." Def. App. 12-13. It noted how he plied her with marijuana and "she essentially became addicted to it." Def. App. 12. The court acknowledged that Eckstrom had not been previously convicted of a crime, but, as with the other

factors Eckstrom argues, gave that mitigating factor little weight in light of the evidence that he had spent years committing crimes.

**4. The Court Both Specifically Addressed the § 3553(a)(2) Factors and the Sufficiency of the Sentence, and Implicitly Dealt With Those Considerations**

Finally, Eckstrom contends that the court failed to explain how the sentence was sufficient, but not greater than necessary, and would satisfy the factors in 18 U.S.C. § 3553(a)(2). Def. Br. 6-7. But a district court is "not required to expressly refer to" those factors. *Abebe*, 651 F.3d at 656; *see also United States v. Tyra*, 454 F.3d 686, 687 (7th Cir. 2006) ("District courts need not recite any magic words at sentencing to assure us that the correct standard is being used."). "[A]s long as a sentencing court considers the arguments made in mitigation, even if implicitly and imprecisely, the sentence imposed will be found reasonable." *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010). Here, despite Eckstrom's arguments, the court both included the "magic words" and considered all the relevant issues.

The court began its sentencing pronouncement by discussing the nature of the Guidelines and stated that it was required to consider the § 3553(a) factors, including issuing a sentence that "must promote

respect for the law," "just punishment for the offense," "deter[ring] criminal activity," "protecting the public from further crimes of the defendant, himself" all with the ultimate goal of arriving "at a sentence that is sufficient, but not greater than necessary, to achieve the statutory goals of sentencing." Def. App. 7-8. It was clear the court knew and considered the parameters of its sentencing discretion.

It then analyzed the specific characteristics of the offense, stating them from the perspective of Jane Doe 1 as told through her victim statements, the perspective of an abusive father, and the judge's own perspective, having viewed representative examples of the pornography Eckstrom produced. Def. App. 9-11. As discussed above, the court also considered and rejected the offered mitigating factors. Def. App. 13-15. Rather than showing that the "trial court could not have properly considered [Eckstrom's] history or characteristics," Def. Br. 4, the record shows that it is exactly what the court considered in handing down the sentence it did.

Eckstrom asserts the court did not explain how its sentence would promote respect for the law. Again, the court does not need to explicitly tick off "magic words." *Tyra*, 454 F.3d at 687. Nevertheless, the court

explicitly addressed the myriad of ways that Eckstrom violated the law—producing, possessing and distributing child pornography, giving his pre-teen daughter marijuana, using intimidation to avoid detection—and said that his conduct "calls out for a stiff punishment." Def. App. 13. By imposing a 240-year sentence, the court sent a message that someone who commits "unimaginable" acts that result in a crime of "astonishing" breadth involving children would receive a term of imprisonment that would prevent him from ever getting out of jail, absent some unforeseen and exceedingly dramatic change to sentencing. Def. App. 11. There was no need for the court to "belabor the obvious" and explain how the sentence would promote respect for the law. *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010).

Eckstrom's arguments that the court failed to consider the deterrence aspects of his sentence seemingly conflict with his argument that the penalty is substantively unreasonable and grossly disproportionate. On the one hand, he argues that the sentence was too severe and the court should have handed down the 30-year sentence he sought. On the other hand, he argues it is unclear how a sentence of this magnitude would deter the general public. A sentence of 240 years

serves notice that such crimes will be met with "stiff punishment." Def. App. 13. It also will accomplish at least one of the goals that this Court has found applies to distribution and possession. This Court has noted that, "[s]entences influence behavior … The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). Eckstrom's "stiff punishment" is a deterrent under that logic.

As to specific deterrence, the court's actions are clear: The 240-year sentence has the ultimate deterring effect of not giving Eckstrom an opportunity to do again what he did to Jane Does 1, 2, and 3. This is especially important for someone who has committed a "hands-on offense." *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011).

Finally, the court stated that it had to "arrive at a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing." Def. App. 8. The court acknowledged Eckstrom was seeking a 30-year sentence by rejecting his Eighth Amendment challenge and noting the Supreme Court had upheld life sentences in less serious cases than this, "[s]o I can't conceive of how the actions in this case

could be an Eighth Amendment violation for the sentence that I'm about to announce." S.A. 2-3. The court implicitly rejected the argument that a 30-year sentence was appropriate by focusing on the fact that Eckstrom had committed heinous crimes and only expressed reluctant remorse after he was caught. *Cf. United States v. Jines*, 597 Fed. Appx. 886, 889 (7th Cir. 2015) (affirming *de facto* life sentence and determining "implicit" in the court's explanation of the "unforgivable actions [defendant committed] against his daughter and countless other minors" was its rejection of the argument that a sentence less than life was appropriate).

The court also very seriously considered whether the Guidelines called for the correct punishment in this case, as evidenced by its discussion about its occasional disagreement with the Guidelines. The judge stated that he "very much agree[s]" with the criticism about how the Guidelines treat child pornography possession. Def. App. 15. But, he noted, "there is a decided difference in my mind between somebody who possesses child pornography … [and] somebody who is actually producing child pornography and then disseminating it." Def. App. 15. The criticisms, the court said, "miss the mark in a case like this where

it involves production over a" long period of time. Def. App. 15. In other words, the court acknowledged that it believes in some cases the sentences called for by the Guidelines are greater than necessary, but in this case, the Guidelines resulted in an appropriate sentence that is sufficient, but not greater than necessary. [8]

## C. Eckstrom Has Failed to Rebut the Presumption of Reasonableness of His Sentence

Since the sentence was within the Guidelines range, *see infra* Section I(B), it is presumed substantively reasonable. *Horton*, 770 F.3d at 585. Eckstrom may rebut the presumption "only by showing that the sentence is unreasonable when measured against the factors in 18 U.S.C. § 3553(a); this includes demonstrating that the district court failed to properly consider mitigating factors." *Id.* Eckstrom has failed to rebut the presumption because, as discussed above and as his counsel admitted twice during sentencing, the court considered the § 3553(a) factors appropriately.

---

[8] While Eckstrom made an argument about recidivism in his briefing to the district court, he has waived that argument on appeal for the reasons discussed above in Section II(A) and by failing to raise it in his opening appellate brief. *See, e.g., United States v. Martinez*, 650 F.3d 667, 671 n.3 (7th Cir. 2011) (sentencing argument not raised in opening brief was waived). The government addressed Eckstrom's recidivism argument fully in its sentencing memorandum. R. 78 at 16-21.

The court knew it was sentencing Eckstrom to die in prison. A 240-year sentence speaks for itself. But the court did not hand down the sentence lightly. The judge acknowledged he was facing "the single-most disturbing case" he had seen on the bench, Def. App. 9, in which the victim's statements were "among the most distressing and troubling I've ever received," Def. App. 10, where the "breadth of the crime is truly astonishing," Def. App. 11, and in which the defendant "stole his daughter's childhood, and she's going to be affected by this and live with this abuse for the duration of her life." Def. App. 13. The four-plus years of sexual exploitation and abuse, drugging, physical abuse, distribution of child pornography, and collecting of child pornography all merited the within-Guideline sentence handed down by the court. Eckstrom has failed to show that the district court abused its discretion.

# CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:     */s/ Nathaniel L. Whalen*
       Nathaniel L. Whalen
       Assistant United States Attorney
       United States Attorney's Office
       Northern District of Indiana
       5400 Federal Plaza, Suite 1500
       Hammond, IN 46320
       (219) 937-5500

# RULE 32 CERTIFICATION

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 8,644 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word word processing program, with fourteen point Century Schoolbook font.

*/s/ Nathaniel L. Whalen*
Nathaniel L. Whalen
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Lorene B. Nelson
Lorene B. Nelson
Legal Assistant

**APPENDIX**

# TABLE OF CONTENTS TO APPENDIX

Selected Portion of Amended Sentencing Transcript (cover page; sentencing pronouncement [p. 75-76]; certificate) (R. 92)......S.A. 1-4

**In The Matter Of:**

*USA v.*
*DANIEL THOMAS ECKSTROM*

---

*2:13-CR-84*
*May 12, 2015*
*AMENDED TRANSCRIPT AS OF 7/29/15*

---

*BOSS REPORTERS*
*Gary * Merrillville * Valparaiso, Indiana*
*3893 East Lincoln Highway (Rt. 30)*
*Merrillville, Indiana  46410*
*(219) 769-9090*



Original File 05-12-15 USA v ECKSTROM AMENDED.txt
Min-U-Script® with Word Index

1  unconstitutional under the Eighth Amendment of the United

2  States Constitution.  I find no cases to support that concept.

3  And as pointed out by the government in their response, there

4  are many, many Circuit Court cases that have held to the

5  contrary.  And, indeed, I believe there's a Supreme Court case

6  where the possession or distribution of a small amount of

7  cocaine, somebody received a life sentence.  And the Supreme

8  Court said that that wasn't a violation of the Eighth

9  Amendment.  So I can't conceive of how the actions in this

10  case could be an Eighth Amendment violation for the sentence

11  that I'm about to announce.

12            Counsel, have I addressed all of your principal

13  arguments in mitigation?  Mr. Schlesinger?

14            MR. SCHLESINGER:  Yes, sir.

15            THE COURT:  Does either side have any objections not

16  previously addressed or voiced?  Any further elaboration on

17  the sentence that -- I suppose I'll ask that after I formally

18  announce the sentence.

19            All right.  It is the judgment of the Court,

20  pursuant to Title 18, United States Code, Sections 3551 and

21  3553, it's the judgment of the Court that the defendant is

22  hereby committed to the custody of the Bureau of Prisons for a

23  term of 360 months on each of the Counts I through VII, a term

24  of 240 months on Count VIII, and a term of 180 months on Count

25  IX, all to be served consecutive to one another for a total

1  term of 2,880 months.

2          The defendant shall be placed on supervised

3  release for life on all counts.  The terms of the supervised

4  release are to run concurrently pursuant to 18 U.S.C 3624(e).

5  And so that's on Counts I through VII, VIII, and IX.

6          While the defendant is on supervised release, if

7  that ever occurs, pursuant to this judgment, the defendant

8  shall comply with the following mandatory conditions:  He

9  must -- he shall not commit another federal, state, or local

10 crime.  The defendant must report to the probation office in

11 the district to which the defendant is released within 72

12 hours of release from the custody of the Bureau of Prisons.

13 The defendant shall not unlawfully possess a controlled

14 substance and shall refrain from any unlawful use of a

15 controlled substance.  Defendant shall submit to a drug test

16 within 15 days of release of imprisonment and to periodic drug

17 tests thereafter as determined by the Court.  He must

18 cooperate in the collection of DNA as directed by the

19 probation officer.  Defendant shall comply with the

20 requirements of the Sex Offender Registration and Notification

21 Act.  That's under 42 U.S.C 16901, as directed by the

22 probation officer, the Bureau of Prisons, and any state sex

23 offender registration agency in which he resides, works, or is

24 a student, or was convicted of a qualifying offense.

25          The defendant shall comply with the following

```
 1              C E R T I F I C A T E

 2   I certify that the foregoing is a correct transcript of the

 3   record of proceedings in the above-entitled matter.

 4

 5

 6

 7

 8

 9   PAMELA S. OWEN_____ 19, 2015

10   PAMELA S. OWEN, CSR, RPR
     Contract Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```